## S04A1062. WICKS v. THE STATE.
### (604 SE2d 768)

CARLEY, Justice.

The grand jury indicted Marika Wicks, Ronnie Chinn and Robert Prather for numerous offenses related to the homicide of taxi cab driver John Agazie. Prather pled guilty to one count of conspiracy to commit armed robbery, and testified for the prosecution at Wicks' and Chinn's joint trial. The jury found both co-defendants guilty of malice murder, two alternative counts of felony murder, armed robbery, aggravated assault, hijacking a motor vehicle, and possession of a firearm during the commission of a felony. After concluding that the verdicts on the felony murder counts were vacated by operation of law (*Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993)), the trial court entered judgments of conviction on the guilty verdicts returned as to the other counts, imposing a life sentence for murder and varying terms of years for the remaining offenses.

The Court affirmed Chinn's convictions and sentences. *Chinn v. State*, 276 Ga. 387 (578 SE2d 856) (2003). Wicks' original appeal was dismissed for failure to file a timely notice of appeal. *Wicks v. State*, 277 Ga. 121 (587 SE2d 21) (2003). Thereafter, the trial court granted Wicks permission to file this out-of-time appeal.[1]

1. In addition to Prather's testimony, the State showed that, shortly after the murder, Wicks was in possession of Mr. Agazie's cab. The victim's blood was found in the vehicle and on Wicks. Wicks made incriminating admissions to others. When construed most strongly in support of the verdicts, the evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of Wicks' guilt of all of the crimes for which he was convicted and sentenced.

---

[1] The crimes were committed on January 10, 1999. The grand jury indicted Wicks and the two co-defendants on September 3, 1999. The jury returned the guilty verdicts on September 5, 2000. The trial court entered the judgments of conviction and imposed the sentences on September 20, 2000. On October 12, 2003, Wicks filed a motion for an out-of-time appeal, which the trial court granted on December 11, 2003. Wicks filed a notice of appeal on December 29, 2003, and the case was docketed in this Court on March 3, 2004. The appeal was submitted for decision on April 26, 2004.

*Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Chinn v. State,* supra at 388 (1).

2. Relying on *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), Wicks contends that the prosecution acted in a racially discriminatory manner by using four of its five peremptory strikes to remove African-Americans from the jury. We considered and rejected this same contention in the appeal of Wicks' co-defendant. "[T]he trial court was not clearly erroneous in finding that the State gave race-neutral reasons for its strikes and these reasons were not a pretext for purposeful discrimination. [Cit.]" *Chinn,* supra at 388-389 (2).

3. Wicks enumerates as error the denial of a motion to sever his trial from Chinn's. The trial court's denial of a severance motion in a non-capital case will not be reversed in the absence of an abuse of discretion. *Davis v. State,* 266 Ga. 801, 802 (3) (471 SE2d 191) (1996). Wicks contends that the trial court's discretion was abused here, because he and Chinn were asserting antagonistic defenses. It appears, however, that the two co-defendants each consistently denied his own participation in crimes without directly implicating the other, and that both equally sought to place responsibility on Prather. See *Kelley v. State,* 248 Ga. 133, 135 (3) (281 SE2d 589) (1981). Under these circumstances, the defenses were not antagonistic. See *Hull v. State,* 265 Ga. 757, 759 (3) (462 SE2d 596) (1995), disapproved on other grounds, *Woods v. State,* 269 Ga. 60, 63 (3) (495 SE2d 282) (1998).

Moreover, the existence of antagonistic defenses, standing alone, is not sufficient to require a severance. "[H]arm due to the failure to sever must be shown. [Cit.]" *Heard v. State,* 274 Ga. 196, 199 (5) (552 SE2d 818) (2001). In that regard, the only contention is that, in closing argument, Chinn's counsel emphasized that the physical evidence, including possession of the victim's taxi and the presence of the victim's blood, was more inculpatory of Wicks than it was of her client. That was an accurate reflection of the evidence, and "[t]he mere fact that the case against [Wicks] was stronger than the case against [Chinn] did not necessitate a separate trial." *Kelley v. State,* supra at 136 (3). Accordingly, denial of the motion to sever was not error.

4. Wicks contends that his trial counsel was ineffective. To prevail on that claim, he must show that the attorney's performance was deficient and that, but for that deficient performance, a reasonable probability exists that the trial would have ended differently. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). After conducting a hearing, the trial court found that Wicks did not prove either of the requisite elements of his claim. On appeal, the trial court's findings of fact must be accepted, unless they are

clearly erroneous, but "we review the lower court's legal conclusions de novo. [Cit.]" *Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003).

(a) With regard to deficient performance, " '[t]he criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. (Cit.)' [Cit.]" *Woods v. State*, 275 Ga. 844, 846-847 (3) (573 SE2d 394) (2002). The sole contention that this presumption was rebutted in this case relates to counsel's purported lack of diligence in investigating Wicks' claim that he was at a nightclub when the crimes were committed. At the hearing on the motion for new trial, however, the attorney testified that he spoke with every person Wicks named as a possible witness who might support his alibi. According to him, this line of inquiry produced "nobody definite that we could ascertain [who] put [Wicks] specifically there at the time the killing took place. . . . I couldn't find a witness [who] was credible to corroborate what he was indicating."

Wicks nevertheless asserts that the investigation was deficient because trial counsel did not personally visit the nightclub and question its staff and clientele. If, however, Wicks' own friends and acquaintances could not verify his alibi, it is highly questionable that total strangers would be likely to provide any corroboration. Although Wicks testified at the new trial hearing that he now knows of additional alibi witnesses, he did not produce any of them and could not even supply their names. He certainly did not make any showing that any uncalled and unnamed potential witness was readily discoverable if trial counsel had only made a personal visit to the nightclub, rather than choosing to rely on the list of names supplied by his client. In fact, Wicks admitted that he "can't remember anybody who . . . was a solid witness."

"Rather than focusing on what . . . would have [been] shown had it been sought, the proper emphasis is on whether counsel's actions, under the circumstances then existing, were reasonable. [Cit.]" *Belton v. State*, 270 Ga. 671, 673 (3) (512 SE2d 614) (1999). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, supra at 690-691 (III) (A). The "correct approach toward investigation reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources. . . . '[A]t some point, a trial lawyer has done enough[.]'. . ." *Rogers v. Zant*, 13 F3d 384, 387 (11th Cir. 1994).

[A] defense attorney may face finite resources of time and money such that a reasonably competent attorney often

must rely on his own experience and judgment, without the
benefit of a substantial investigation, when deciding whether
or not to forego a particular line of defense. [Cit.]

*Brady v. State*, 270 Ga. 574, 576 (4) (a) (513 SE2d 199) (1999). Under
the circumstances, the trial court did not err in concluding that the
attorney performed effectively, because he "did do an investigation . . .
and . . . there's [no] constitutional or statutory requirement that he
actually make a visit to [the] club."

(b) Because the trial court was authorized to find that trial
counsel's performance was not deficient, we need not address its
additional conclusion that Wicks failed to prove that there is a
reasonable probability that, but for the failure to conduct the alibi
investigation differently, the trial would have resulted in an acquit-
tal. See *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

5. Wicks urges that the trial court erroneously failed to give
curative instructions after the prosecutor made an improper golden
rule argument. In *Chinn*, supra at 389 (3), we held that the comment

was not a golden rule argument and did not deprive the
defendant of a fair trial[. Therefore], we conclude that the
trial court did not abuse its discretion in denying [the]
motion for a mistrial or in failing to instruct the jury to
ignore the argument. [Cit.]

Wicks maintains that the trial court still erred, because it stated
that it would give a curative instruction, but then failed to do so. See
*Goins v. State*, 177 Ga. App. 536 (1) (339 SE2d 790) (1986). The record
reflects that, although the trial court correctly recognized that the
argument was not improper, it indicated that it would instruct the
jurors "that in considering this case they are not to place themselves
in the position of any of the parties or any of the actors in this case,
that they must remain neutral and decide the case on the basis of the
evidence." This statement on the part of the trial court must be
considered in light of our holding in *Chinn*, supra at 389 (3), that such
an instruction was an unnecessary response to the prosecutor's
comment. A defendant is not entitled to a jury charge on legal issues
which are irrelevant, not tailored to the evidence or factually inap-
plicable. *Nel v. State*, 252 Ga. App. 761, 766 (7) (557 SE2d 44) (2001).
" 'In order to have reversible error, there must be harm as well as
error. . . . (Cit.)' [Cit.]" *Shadron v. State*, 275 Ga. 767, 771 (5) (573 SE2d
73) (2002).

Moreover, the transcript shows that the trial court did give a full
and fair charge touching on all of the applicable issues, including the
presumption of innocence, the State's burden of proving guilt beyond

a reasonable doubt, which was defined as "a doubt of a fair-minded, impartial juror honestly seeking the truth," and a specific instruction that the "arguments of counsel" were not to be considered as evidence in determining guilt or innocence. In the absence of a written request for a more detailed charge, this was sufficient to satisfy the trial court's promise to instruct the jury that, rather than relying on anything that might have been said in the attorneys' subjective closing arguments, it was to decide the case on an objective and impartial evidentiary basis. "The court was not required to use the exact language used earlier when the court gratuitously informed the parties of how it would later charge the jury on this issue." *Hampton v. State*, 238 Ga. 608, 611 (234 SE2d 521) (1977).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 25, 2004.

*Calvin Lamar, Jr.*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Anna E. Green, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Raina Nadler, Assistant Attorney General*, for appellee.