A05A1463. GRIER v. THE STATE.
(624 SE2d 149)

MIKELL, Judge.

After a jury trial, Eric Grier was convicted of false imprisonment, aggravated assault, and aggravated battery, and acquitted of kidnapping, aggravated sodomy, and two counts of rape.[1] Grier appeals his conviction, arguing that the trial court erroneously excluded

---

[1] Hasani Hall and Robert Crane were also indicted with Grier in connection with the incident in this case. Hall and Grier were co-defendants at trial. Hall was acquitted of all charges for which he was indicted, which included false imprisonment, aggravated assault, aggravated battery, and rape. Crane pled guilty to false imprisonment and the remaining charges against him, aggravated assault, aggravated battery, and rape, were dismissed.

certain evidence and incorrectly instructed the jury. Grier also challenges his trial counsel's effectiveness. We affirm.

"On appeal, we view the evidence in the light most favorable to support the jury's verdict; an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[2] So viewed, the evidence shows that Shaqunna Zachery was the alleged victim in each of the offenses charged. Zachery testified that as she waited at a bus stop at approximately 8:00 p.m. on February 15, 2002, Grier, whom she did not know, forced her into his car and took her to a house. During the drive to the house, Grier told her that she was his "ho," and that he was "gorilla pimping" her. She understood that he was calling her a prostitute.

Zachery further testified that upon their arrival at the house, co-defendant Hall was present. Grier took Zachery to an upstairs room that had a mattress on the floor and told her to remove her clothes. When Zachery refused, Grier repeatedly slapped her face until she disrobed. Grier went through her clothes, took some personal items from her wallet, and put her in a closet. Grier used the door to the room, which was off its hinges, to block the closet door after he forced Zachery into the closet.

According to Zachery, Grier walked in and out of the room while she was in the closet, asking her if she were his "ho," and she repeatedly said no. He pulled her from the closet, used an extension cord to tie her hands behind her back, then slapped her to force her to the floor. Grier asked her again if she would be his "ho" and when she refused, he burned her with a hot metal hanger on her back. He repeatedly posed this question, and each time she said no, he burned her again. Zachery testified that Grier burned her on her buttocks, her inner thighs, stomach, and breast. Once he began to burn her breast, she agreed to be his "ho," and he left the room.

Zachery testified that she had managed to untie herself by the time Grier returned to the room; that he hit her with the extension cord on her legs, then slapped her in the face until she agreed to lie down on the mattress; that he raped her then told her to wash up; that when she returned to the room, Grier and two other men were present, one of whom was Hall, whom Grier referred to as "Po Boy"; that Grier told both men to have sex with her and gave them condoms; and that Hall initially said that he did not want to sleep with her, but both men raped her. That night, Zachery slept on a mattress in another room with Grier, and Hall remained in the house. From Grier's conversation, Zachery realized that he intended to make her his prostitute.

---

[2] (Footnote omitted.) *Weeks v. State*, 268 Ga. App. 886 (1) (602 SE2d 882) (2004).

On the next morning, Zachery walked with Grier to his uncle's home and along the way, he told various people that she was his "ho" and they could pay him to have sex with her. When asked why she did not try to escape or scream, she said that she could barely walk because her burns were hurting and that she was afraid that Grier would kill her. He introduced her to his uncle's family as his "ho." After they left his uncle's house, they walked to a gas station, where Grier told two men, who worked at the station, that they could have sex with her for $50 each. The men told them to come back at 4:00 p.m. As Grier and Zachery returned to the gas station, he told her that he would split the money he made with her. Grier gave Zachery his number to call him when she was done and she drove away with the two men to a nearby hotel. Once the men saw her burns, however, they did not want to have sex with her. Instead, they asked her where she wanted to go and took her to her boyfriend's room.

Zachery reported the incident to the police. The responding officer took Zachery and her boyfriend to the police department, where Zachery gave a statement and her burns and scars were photographed, then to the hospital. Days later, Zachery met with another police officer and identified Grier, Hall, and the third man who raped her from a photographic lineup.

Co-defendant Crane testified that he was charged along with Hall and Grier for acts allegedly committed upon Zachery; that on the date of the incident, he saw Zachery at a gas station and called Grier and told him that he had a "ho" for him; that Grier arrived and picked up Zachery; that they told her they were having a barbeque to get her to the house; that he followed Grier and Zachery to Hall's house; that he knew that Zachery did not want to be a "ho"; that he saw Grier burn Zachery with a coat hanger; that he did not have sex with Zachery or witness Grier or Hall having sex with her; that he saw Grier put Zachery in the closet, hit her, and position the coat hanger such that it would leave the most burn marks on her body; that Hall was upset that Grier was abusing Zachery in his house and that Grier became aggressive with him and Hall; and that Hall gave a videotaped statement implicating him because he was scared of Grier.

1. In his first error, Grier argues that the trial court erred in excluding evidence that Zachery voluntarily went to Hall's house for purposes of prostitution and makes the alternative argument that his counsel was ineffective for failing to introduce evidence on this point. We will address Grier's ineffectiveness claim in Division 4 below when we address his other claims of ineffectiveness.

The state moved in limine to exclude evidence pertaining to Zachery's sexual history with persons other than the defendants on the grounds that the evidence would violate the rape shield statute, codified at OCGA § 24-2-3. Pursuant to subsection (a) of the statute,

"evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses" and specifically excludes evidence of the complaining witness's "general reputation for promiscuity." Grier argues, however, that the trial court's ruling prevented him from advancing his theory of the case that Zachery was a prostitute, who voluntarily came to and remained at Hall's house for purposes of prostitution, and that she was burned by Crane in retaliation for her pimp's assault of one of Crane's prostitutes. Grier maintains that the evidence of Zachery's intent to engage in prostitution was directly related to the false imprisonment charge.

Assuming, arguendo, that the trial court's ruling was erroneous, the verdict is nonetheless sustainable. "In order to have reversible error, there must be harm as well as error."[3] Even in the absence of the proffered evidence, the evidence that Zachery was forced into a closet against her will was sufficient to sustain the guilty verdict on the false imprisonment charge. Pursuant to OCGA § 16-5-41 (a), "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." "[T]his statute on its face does not require that the imprisonment be for a specific length of time; all that is required is there be an arrest, confinement or detention of the person, without legal authority . . . against his or her will. A brief detention is sufficient."[4] Therefore, the jury could have concluded that Zachery voluntarily came to and remained at Hall's home for the purpose of prostitution and simultaneously found Grier guilty of false imprisonment as well as assault and battery. The jury's acquittal of Grier on the kidnapping, aggravated sodomy, and rape charges is consistent with this conclusion.

2. In his third enumeration of error, Grier argues that the trial court erred when it prohibited the testimony of Joshan Michael Dorsey, who would have provided exculpatory evidence, because it concluded that Grier violated the reciprocal discovery statutes. We review the trial court's decision to exclude the witness under an abuse of discretion standard,[5] and we find no abuse of discretion here.

Pursuant to OCGA § 17-16-8 (a), "the defendant's attorney, within ten days after compliance by the prosecuting attorney but no

---

[3] (Citation and punctuation omitted.) *Wicks v. State*, 278 Ga. 550, 553 (5) (604 SE2d 768) (2004).

[4] (Punctuation and footnotes omitted.) *Rehberger v. State*, 235 Ga. App. 827, 828 (1) (510 SE2d 594) (1998).

[5] See *Card v. State*, 273 Ga. App. 367, 371 (3) (615 SE2d 139) (2005); *Jones v. State*, 251 Ga. App. 285, 286 (1) (554 SE2d 238) (2001).

later than five days prior to trial, . . . shall furnish to the opposing counsel . . . the names, current locations, dates of birth, and telephone numbers of [the defendant's] witnesses." Upon a showing of bad faith and prejudice, the trial court is authorized to prohibit the testimony of a witness who was not identified in a timely manner.[6] The record shows that on the afternoon of the third day of trial, Grier's trial counsel informed the court that he intended to offer the testimony of Dorsey to rebut Crane's testimony and that he had first learned of Dorsey on the afternoon of the previous day. Trial counsel had informed Crane's counsel of the identity of the witness earlier that morning. When asked about the content of Dorsey's testimony, Grier's counsel stated that Dorsey would testify that he was at the house on the day of the incident, that Crane repeatedly said that he would burn Zachery, that he saw Crane with the hot metal hanger, that he heard whimpering from one of the rooms in the house, that Crane said he was going to burn the girl because another man had "cut up one of his 'hos.'" The trial court gave Crane's counsel and the state an opportunity to talk to Dorsey before hearing objections to his testimony.

The state objected to Dorsey's testimony on the grounds that it violated the reciprocal discovery statute, OCGA § 17-16-1 et seq. The state indicated that it learned from Travis Johnson, who claimed to have witnessed the incident as well and was sitting with Dorsey outside of the courtroom, that he spoke with Grier's counsel and gave him a statement during the prior week that someone named "Mike," who was Dorsey, had also seen Crane burn Zachery. The state also pointed out that Grier's counsel should have informed the state of the witness earlier that morning during a discussion about another witness that Grier's counsel indicated that he wished to call to testify that day. The trial court excluded the witness, finding that Grier's counsel had violated the discovery statute. After asking to see Johnson and Dorsey, the trial court also expressed its concern that a violation of the rule of sequestration may have occurred.

When Grier's counsel asked to make a proffer as to Dorsey's testimony, the trial court then expressed its concern that the witness needed to be informed of his right not to incriminate himself. The witness was so informed, then Grier's counsel informed the court that because Dorsey had concerns about incriminating himself, he would only ask him questions about when they first had contact. Dorsey then testified that he first talked to Grier's counsel on the evening of the previous day and that he had not been in the courtroom earlier

---

[6] OCGA § 17-16-6.

that day nor had he talked to anyone about the testimony of other witnesses from that day.

We find no error in the trial court's decision to exclude Dorsey as a witness as there was evidence to support the trial court's findings of bad faith and prejudice. First, the evidence showed that trial counsel apprised co-defense counsel of Dorsey's identity early that morning but did not mention Dorsey to the court or the state even in the midst of a discussion about another witness he wished to testify that day. Second, the state already had negotiated a plea deal with Crane. We note, however, that even if we had concluded that the trial court erred, this enumeration of error would still fail as Grier has failed to demonstrate harm. As stated earlier, there must be harm as well as error to warrant the reversal of a conviction.[7] There was other evidence in the record that Crane was the actual perpetrator. Investigator N. K. Redlinger testified that Hall told her that Crane brought Zachery to the house and that Crane burned her with the metal hanger. "It is the jury's prerogative to choose what evidence to believe and what to reject[,]"[8] and the jury obviously chose to disbelieve that Crane was the perpetrator.

3. Grier contends that the trial court erroneously instructed the jury regarding the required unanimity of the verdict. Specifically, Grier argues that the court's charge "implies . . . that its members must as a matter of law reach a unanimous conclusion, either guilty or not guilty." We disagree.

After explaining that there would be one verdict form for each defendant and how to use them, the court stated that "One of your number as foreperson will sign and date the verdict form which will be published in open court. That process must be unanimous. Again I will go through that in just a minute, but unanimous means all of you reach the same conclusion and agree to that." The court later charged the following:

> Whatever your verdict is it must be unanimous, that is, agreed by all. The verdict must be signed by one [sic] your members as foreperson, dated and returned to be published in open court. One of your first duties in the jury room will be to select one of your number to act as foreperson who will preside over your deliberations and who will sign the verdict to which all 12 of you freely and voluntarily agree. You should start your deliberations with an open mind. Consult

---

[7] See *Wicks*, supra.

[8] (Citation and punctuation omitted.) *Mills v. State*, 273 Ga. App. 699, 700-701 (1) (615 SE2d 824) (2005).

with one another and consider each other's views. Each of you must decide this case for yourself, but you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion if convinced that it is wrong. However, you should never surrender an honest opinion in order to be congenial or to reach a verdict solely because of the opinions of the other jurors.

When read as a whole,[9] the charge aptly advised the jury that each member must decide the case for himself and not abandon an honest opinion for a unanimous verdict. Therefore, we find no error.

4. Grier argues that his trial counsel rendered ineffective assistance of counsel because he failed to: (a) introduce evidence that Zachery voluntarily came to Hall's home for the purposes of prostitution; (b) introduce Hall's videotaped statement implicating Crane into evidence; (c) identify Dorsey as an exculpatory witness, pursuant to the reciprocal discovery statutes; and (d) object to Crane's testimony regarding Grier's bad character and commission of other crimes. For the reasons discussed below, this error fails.

"To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies."[10] Additionally, "[a] court . . . is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one [and its] finding of effectiveness must be upheld unless clearly erroneous."[11]

In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper

---

[9] *Garrett v. State*, 271 Ga. App. 646, 650 (2) (610 SE2d 595) (2005) ("Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence. There is no error where it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence.") (citation omitted).

[10] (Citations omitted.) *Hardegree v. State*, 230 Ga. App. 111, 113 (4) (495 SE2d 347) (1998).

[11] (Citations and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

functioning of the adversarial process that the trial court could not reliably have produced a just result.[12]

Before addressing Grier's specific claims of ineffective assistance, we note that the state also indicted Grier for two counts of rape, aggravated sodomy, and kidnapping and that the jury acquitted him of each of these offenses. "This circumstance strongly supports the conclusion that the assistance actually rendered by defendant's trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render."[13]

(a) Counsel's failure to introduce evidence that Zachery was a prostitute or intended to engage in prostitution on the day in question does not constitute ineffective assistance of counsel. As discussed in Division 1, the rape shield statute did prohibit the introduction of evidence that Zachery was a prostitute[14] and any error in excluding this evidence was harmless. Therefore, Grier has not established the second prong of the ineffectiveness standard, i.e., that counsel's deficient performance prejudiced his defense.[15]

(b) Next, Grier maintains that counsel's failure to introduce Hall's videotaped statement implicating Crane rendered his assistance ineffective. We disagree.

The state chose not to introduce Hall's statement on the grounds that it violated the rule in *Bruton v. United States*,[16] which "prohibits the statement or confession of a co-defendant who does not testify at a joint trial, to be used to implicate other co-defendants."[17] Grier's counsel waived the *Bruton* issues and stated that he had no objection to the playing of the videotape. Nonetheless, none of the parties introduced the videotape. When asked at the hearing on the motion for new trial the reason that he did not introduce the videotape, Grier's trial counsel testified that he did not need to introduce it because he already had solicited through the cross-examination of Redlinger the evidence that would have benefitted his client had the tape been admitted; i.e., that Crane brought Zachery to Hall's house and burned her with the metal hanger. Because the evidence on the videotape was cumulative of evidence he introduced through the

---

[12] (Citations omitted.) *Powell v. State*, 272 Ga. App. 628, 630 (2) (612 SE2d 916) (2005).

[13] (Citation and punctuation omitted.) Id.

[14] See OCGA § 24-2-3.

[15] See *Benton v. State*, 259 Ga. App. 303, 306 (5) (576 SE2d 674) (2003).

[16] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[17] *Sims v. State*, 243 Ga. 83, 84 (1) (252 SE2d 501) (1979).

cross-examination of the investigator, trial counsel's decision was a matter of strategy and cannot amount to ineffective assistance of counsel.[18]

(c) Grier contends that his trial counsel was ineffective because he violated the reciprocal discovery statutes when he did not inform the state that he intended to introduce Dorsey as a witness. As stated in Division 2, the crux of Dorsey's purported testimony, that Crane brought Zachery to Hall's house and was the person who burned her with the hanger, was introduced by Grier's counsel through his cross-examination of Redlinger. Thus, even if Grier's counsel was deficient by failing to identify Dorsey in a timely manner, Grier cannot show that this deficiency prejudiced his defense.

We also note that to the extent that Grier's contention is based on the fact that trial counsel was ineffective because he did not make a proffer of the evidence through Dorsey, Grier submitted no evidence in the new trial hearing that demonstrated how Dorsey's testimony would have helped his defense. "Absent [such] a proffer, [Grier] cannot meet his burden of making an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case."[19] Thus, this claim of ineffectiveness also fails.

(d) Finally, Grier claims that trial counsel was ineffective because he failed to object to Crane's testimony that Hall implicated Crane because he was afraid to implicate Grier, that Grier told him that he would threaten to kill Zachery if she came to court, and that he feared for his own safety because he was testifying against Grier. We disagree. "A decision on whether to object when a defendant's character is placed in issue is a matter of trial tactics and does not equate with ineffective assistance of counsel."[20] Accordingly, this claim of ineffectiveness also fails.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 20, 2005 —
RECONSIDERATION DENIED DECEMBER 5, 2005 —

*Barry M. Hazen*, for appellant.

---

[18] See *Williams v. State*, 273 Ga. App. 634, 637 (3) (615 SE2d 792) (2005).

[19] (Citation and punctuation omitted.) *Sanders v. State*, 253 Ga. App. 380, 382 (559 SE2d 122) (2002).

[20] (Citation omitted.) *Beattie v. State*, 240 Ga. App. 327, 329 (2) (c) (523 SE2d 389) (1999).

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.