S12A0853. GREEN v. THE STATE.
(728 SE2d 668)

CARLEY, Chief Justice.

After a jury trial, Appellant Sam Green was found guilty of the malice and felony murder of Candy Wright, a separate charge of aggravated assault against Ms. Wright, and the rape and aggravated assault of Leanna Ziel. The felony murder verdict was vacated by operation of law, and the charge of aggravated assault against Ms. Wright was merged into the malice murder count. The trial court entered judgments of conviction on the remaining guilty verdicts and imposed consecutive sentences of life imprisonment for murder and for rape and 20 years for aggravated assault. A motion for new trial was denied, and Appellant filed a timely notice of appeal.[*]

---

[*] The crimes occurred on July 6, 2007 and on September 24, 2007, and the grand jury returned an indictment on October 29, 2008. The jury found Appellant guilty on October 15, 2010, and, on October 22, 2010, the trial court entered the judgments of conviction and

1. Construed most strongly in support of the verdicts, the evidence shows that, in the early morning hours of July 6, 2007, Curtis White saw Appellant on top of Ms. Wright in a filthy shed and was told to keep going. Shortly thereafter, Appellant exited the shed, spoke with White, and started to run away. White checked on Ms. Wright, found her almost completely unclothed, realized that she was dead, told Vincent Robinson to call the police, and later identified Appellant in a photographic lineup and in court. Ms. Wright died of manual strangulation with multiple sharp force and blunt force injuries, and Appellant's DNA was found on the genital, rectal, and buttocks areas of her body. Appellant admitted that he had consensual sex with Ms. Wright on several occasions. In the early morning hours of September 24, 2007, Appellant grabbed Ms. Ziel, pushed her through a fence hole and onto some steps, held her neck with his hand to the point that she could not breathe, raped her, and fled. Ms. Ziel noticed and later identified Appellant's skull's head belt buckle, which was found in his bedroom and identified as his by his sister. Appellant's DNA was recovered in semen from Ms. Ziel's vaginal and rectal areas, and she identified him in court.

Appellant contends that the evidence would be insufficient if, as argued in other enumerations, certain evidence had been excluded and trial counsel had not been ineffective. The determination of the sufficiency of evidence, including what specific evidence can be considered and the effect of trial errors, has serious implications. Under *Burks v. United States*, 437 U. S. 1 (98 SC 2141, 57 LE2d 1) (1978), "once a reviewing court reverses a conviction solely for insufficiency of the evidence to sustain the jury's verdict of guilty, double jeopardy bars retrial." *Hall v. State*, 244 Ga. 86, 93 (5) (259 SE2d 41) (1979). However, the Double Jeopardy Clause "does not preclude the State from retrying a criminal defendant whose conviction is set aside due to trial error, such as the incorrect admission of evidence or improper instructions. [Cits.]" *State v. Caffee*, 291 Ga. 31, 34 (3) (728 SE2d 171) (2012). "[A] reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause . . . ." *Lockhart v. Nelson*, 488 U. S. 33, 41 (109 SC 285, 102 LE2d 265) (1988). Furthermore, with rare exceptions, "where a 'defendant was deprived of effective assistance of counsel but the evidence was nevertheless sufficient to convict, the proper remedy is to reverse defendant's

sentences on the guilty verdicts. The motion for new trial was filed on October 28, 2010, amended on July 7, 8, and 27, 2011, and denied on October 19, 2011. Appellant filed the notice of appeal on October 27, 2011. The case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

conviction and remand the matter for a new trial. (Cits.)' [Cits.]" *Langlands v. State*, 282 Ga. 103, 105 (2) (646 SE2d 253) (2007). Appellant's ineffectiveness claims involve the alleged failure to obtain more evidence, and, even if error in that regard requires reversal, a retrial itself would not violate his constitutional rights or be required for any other reason. See *Langlands v. State*, supra. Thus, in determining the sufficiency of the evidence, we consider all of the evidence admitted by the trial court, regardless of whether it was erroneously admitted, and disregard any additional evidence which a competent attorney might have obtained. See *Maxwell v. State*, 262 Ga. 73, 74 (1) (414 SE2d 470) (1992), overruled on other grounds, *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). Compare *Livingston v. State*, 268 Ga. 205, 209 (1) (486 SE2d 845) (1997) (where, unlike here, hearsay was erroneously admitted, was wholly without probative value under unique Georgia rule applicable prior to the January 1, 2013 effective date of OCGA § 24-8-802, and therefore could not be considered in reviewing the sufficiency of the evidence).

Considering all of the evidence admitted by the trial court, and only that evidence, in the light most favorable to the verdicts, we conclude that the evidence, as summarized above, was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant enumerates as error the trial court's denial of a motion to sever the offenses committed on July 6, 2007 from those occurring on September 24, 2007, arguing that the offenses were not sufficiently similar.

> "If the charges are joined solely because they are of the same or similar character, a defendant has an absolute right to sever. (Cits.) . . . (However,) offenses have not been joined *solely* because they are of the same or similar character when evidence of one offense can be admitted upon the trial of another, i.e., when they are so strikingly similar as to evidence a common motive, plan, scheme or bent of mind. (Cits.)" [Cit.] (Emphasis in original.)

*Heard v. State*, 287 Ga. 554, 558-559 (4) (697 SE2d 811) (2010). "To be admissible, an independent act 'does not have to mirror every detail' of the crime charged, [cit.], and may reflect only a portion of the acts that establish the crimes being tried. [Cit.]" *Chua v. State*, 289 Ga. 220, 232 (2) (710 SE2d 540) (2011).

Instead of focusing on the similarities between the two incidents, Appellant improperly focuses on the differences, including the absence

of a severe injury resulting in death in one incident and the fact that the other incident may have begun with consensual sex. *Humphrey v. State*, 281 Ga. 596, 598 (2) (642 SE2d 23) (2007). See also *Green v. State*, 279 Ga. 455, 456 (2) (614 SE2d 751) (2005) (shooting and death occurred during only one incident). Both of the incidents in this case involved homeless victims with histories of prostitution and drug abuse, occurred within a short distance of one another, late at night less than three months apart, and had the same modus operandi of strangulation coupled with sexual activity in very unpleasant locations. See *Spencer v. State*, 268 Ga. 85, 86 (2) (485 SE2d 477) (1997); *Peppers v. State*, 261 Ga. 338, 339-340 (2) (404 SE2d 788) (1991). Thus, "evidence of crimes committed on one date would be admissible in the trial of those perpetrated on the other date." *Heard v. State*, supra at 559 (4).

The trial court properly found not only that each incident would be admissible as a similar transaction upon trial of the other, but also that the trier of fact in this case would be able to judge each individual offense fairly and intelligently. Accordingly, " 'it cannot be said that the trial court abused its discretion in denying the motion for severance. (Cit.)' [Cit.]" *Heard v. State*, supra.

3. Appellant contends that the trial court erred in not allowing defense counsel to impeach Ms. Ziel with a certified copy of her misdemeanor conviction for prostitution on the ground that it is a crime of moral turpitude.

However, "[m]oral turpitude is no longer the standard." Paul S. Milich, *Ga. Rules of Evidence* § 14:4 (2011-2012 ed.). See also *Clements v. State*, 299 Ga. App. 561, 562 (1) (683 SE2d 127) (2009). "Evidence that any witness . . . has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense." OCGA § 24-9-84.1 (a) (3). A prostitution conviction is inadmissible under this statute, as it is not in the nature of crimen falsi, involving some element of dishonesty or false statement. *United States v. Colbert*, 116 F3d 395, 396 (9th Cir. 1997); *State v. Al-Amin*, 578 SE2d 32, 38 (II) (A) (S.C. App. 2003); *Commonwealth v. McNeil*, 679 A2d 1253, 1259 (Pa. 1996); *State v. Zaritz*, 456 NW2d 479, 485 (Neb. 1990). See also *Clements v. State*, supra.

More fundamentally, even if a prostitution conviction would otherwise be admissible pursuant to OCGA § 24-9-84.1, it is nevertheless barred from admission into evidence by our "rape shield" statute where, as here, it relates to the past sexual behavior of the complaining witness in a prosecution for rape and does not come within an exception in OCGA § 24-2-3. *Fuller v. State*, 169 Ga. App. 488, 489-490 (1) (313 SE2d 505) (1984). Compare *Villafranco v. State*,

252 Ga. 188 (313 SE2d 469) (1984). "Allowing evidence of prostitution that does not relate to the incident itself discourages reporting and prosecution of rapes. Even if such evidence is accurate, it does not remove the protection of the Rape Shield Statute. [Cits.]" *Brown v. State*, 214 Ga. App. 676, 678 (2) (448 SE2d 723) (1994). See also *Grier v. State*, 276 Ga. App. 655, 662 (4) (a) (624 SE2d 149) (2005).

4. Appellant urges that the trial court erred by denying a motion to suppress incriminating pre-trial statements made by Appellant during a police interview. He argues both that the statements were not freely and voluntarily given and that his right to counsel was denied when officers continued to question him after he asked about a lawyer.

With respect to the voluntariness of his statements, Appellant relies primarily on his own testimony that his parole officer told him that a condition of his parole was to cooperate with the police and that if he did not go to the police station, he could be arrested for failure to cooperate. However, the trial court specifically found this testimony not to be credible in light of both the other testimony received during the suppression hearing and the video recording of the interview. " 'On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous . . . (and) independently apply the legal principles to the facts.' [Cit.]" *Farris v. State*, 290 Ga. 323, 326 (2) (720 SE2d 604) (2012). In this case, the evidence authorized the trial court's finding that Appellant was not in custody at the time of the statements but nevertheless was advised of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), understood and waived them, and agreed to speak with detectives. Although Appellant's response was ambiguous when asked whether he voluntarily came to the police station, the detective with whom Appellant rode testified that he readily agreed to come when asked if he would mind coming, and the video recording shows that he was repeatedly assured that he was not under arrest. Moreover, even if the parole officer did insist on cooperation and indicate that Appellant could otherwise be arrested, that fact alone would not convert his otherwise voluntary statements into compelled ones within the meaning of the Fifth Amendment. See *Minnesota v. Murphy*, 465 U. S. 420, 427 (II) (A) (104 SC 1136, 79 LE2d 409) (1984). Accordingly, we conclude that the trial court did not err in finding that Appellant's statements were freely and voluntarily made. See *Turner v. State*, 287 Ga. 793, 795 (3) (700 SE2d 386) (2010).

Appellant alternatively argues that, despite case law to the contrary, his right to counsel was denied by continued questioning, even though his request for counsel was equivocal, because he was in a "precarious position" and the officers had probable cause for arrest

and were planning to arrest him. In the first place, the "bright-line rule" of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), "requiring that all questioning cease after an accused has requested counsel, applies only to custodial interrogation. [Cit.]" *Petty v. State*, 283 Ga. 268, 270 (2) (658 SE2d 599) (2008). Moreover, even if Appellant was in custody, no exception to the requirement of an unequivocal request for counsel exists. To the contrary, the Supreme Court of the United States has specifically declined an "invitation to extend *Edwards* and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney. [Cit.]" *Davis v. United States*, 512 U. S. 452, 459 (II) (114 SC 2350, 129 LE2d 362) (1994). That Court further held, among other things, that the *Edwards* rule "provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information," that requiring questioning to cease if a suspect makes a statement that might be a request for an attorney would destroy "this clarity and ease of application" and would force police officers "to make difficult judgment calls," that clarifying questions are not required, and that the Supreme Court is "unwilling . . . to prevent police questioning when the suspect *might* want a lawyer." (Emphasis in original.) *Davis v. United States*, supra at 461-462 (II). See also *Jordan v. State*, 267 Ga. 442, 444-446 (1) (480 SE2d 18) (1997) (following *Davis*). Contrary to Appellant's argument regarding his particular circumstances, it is error to examine the totality of the circumstances in deciding whether he invoked his right to counsel. *Allen v. State*, 259 Ga. 63, 67 (1) (b) (377 SE2d 150) (1989).

5. The trial court's denial of a motion to suppress the belt buckle found at Appellant's residence is also enumerated as error. However, in the trial court and on appeal, Appellant has acknowledged, and declined to dispute, the State's authority to conduct the search pursuant to his Fourth Amendment parole waiver. See *Samson v. California*, 547 U. S. 843 (126 SC 2193, 165 LE2d 250) (2006). He makes only the cursory statement, without any explanation or supporting authority, that it nonetheless would have been more appropriate for the officers to obtain a search warrant. In the absence of any argument or citation of authority in support of this enumeration, it must be deemed abandoned under Supreme Court Rule 22. Moreover, the relevant issue is the constitutional authority for the search as conducted, and not whether a different, hypothetical course of action would have been more desirable.

6. Appellant contends that the trial court erred by denying a motion to suppress identification testimony as based upon impermissibly suggestive photographic arrays which resulted in misidentifications.

> "Testimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, '(t)his is our suspect.' " [Cit.] "(I)t is well established that if the court does not find that the lineup was suggestive then it need not reach the issue of whether there was a substantial likelihood of misidentification. [Cit.]"

*Davis v. State*, 286 Ga. 74, 76 (2) (a) (686 SE2d 249) (2009). Appellant argues that his photo in two different lineups shown to White and Ms. Ziel is more of a closeup shot and has more detail than the other photos, thereby causing both of those witnesses to select Appellant. However, Georgia courts have "repeatedly held that slight differences in the size, shading, or clarity of photographs used in an identification lineup will not render the lineup impermissibly suggestive. [Cits.]" *Pinkins v. State*, 300 Ga. App. 17, 21 (684 SE2d 275) (2009). See also *Whitaker v. State*, 269 Ga. 462, 463 (2) (499 SE2d 888) (1998) ("variances in texture, shading or tone [of the photographs] will not necessarily render the procedure impermissibly suggestive"). Having reviewed the photographic arrays, we conclude that the differences that Appellant has pointed out are indeed slight, that his photograph is not the only one in each array with as much clarity, and that Appellant has failed to show how the differences would render either array unduly suggestive. *Davis v. State*, supra at 77 (2) (a). See also *Waters v. State*, 281 Ga. 119, 120 (2) (636 SE2d 538) (2006). Accordingly, the trial court was authorized to find the photographic identification procedures not to be impermissibly suggestive and therefore did not abuse its discretion by denying the motion to suppress. *Davis v. State*, supra; *Waters v. State*, supra.

7. Appellant further contends that the State improperly injected his character into evidence in violation of OCGA §§ 24-9-20 and

24-9-84.1 by playing for the jury that portion of his recorded statement where the detective asked him what he was doing time for and Appellant answered "burglary." "However, [Appellant] failed to object to the evidence at trial; therefore, he has waived appellate review of the issue. [Cit.]" *Sampson v. State*, 282 Ga. 82, 83 (2) (646 SE2d 60) (2007). See also *Jennings v. State*, 288 Ga. 120, 123 (5) (702 SE2d 151) (2010).

8. Appellant asserts that the trial court's instruction on aggravated assault was improper in three respects. However, "no objection was made after instructions were given to the jury following closing arguments." *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012). Nevertheless, under *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011), "we are required to consider whether the court's jury instruction constitutes plain error since [A]ppellant properly enumerated and argued the issues on appeal. [Cit.]" *Davis v. State*, 290 Ga. 757, 761 (5) (725 SE2d 280) (2012).

> Reversal is authorized if all four prongs of the standard adopted in *Kelly* are met: the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. [Cit.]

*White v. State*, supra at 8 (2). "Satisfying all four prongs of this standard 'is difficult, "as it should be." (Cit.)' [Cit.]" *State v. Kelly*, supra at 33 (2) (a).

(a) Appellant first contends that the trial court twice erroneously used the word "jury" rather than the correct word "injury" when it charged the jury as follows: "You may or may not infer the serious injury producing character of the instruments in question, the nature and extent of the jury, if any, inflicted upon the person allegedly attacked." Assuming that the incorrect word was not a transcription error, it was at worst a slip of the tongue which was not noticed by counsel. The general rule in this regard is that "the existence of a mere verbal inaccuracy in a jury instruction, resulting from a palpable 'slip of the tongue' and which could not have misled or confused the jury will not provide a basis for reversal of a defendant's conviction. [Cit.]" *Render v. State*, 288 Ga. 420, 424 (2) (b) (704 SE2d 767) (2011). The trial court recharged the jury, twice using the correct word. Appellant argues that the court never told the jury to disregard his earlier incorrect language. Such action would be necessary if the charge was legally erroneous. However, "[t]he charge in this case was not legally erroneous. The court, instead, uttered a verbal inaccuracy

resulting from a slip of the tongue, and the recharge was clearly adequate to prevent the jury from being confused or misled." *Hall v. State*, 261 Ga. App. 64, 69 (4) (581 SE2d 695) (2003). Moreover, even in the initial charge, the word "injury" was correctly used in the immediately preceding clause, and the subsequent use of the word "jury" did not give any viable alternative meaning to the charge. "Thus, in considering the charge in its entirety, we are satisfied that the misstatement did not amount to reversible error. [Cit.]" *Delacruz v. State*, 280 Ga. 392, 398 (5) (627 SE2d 579) (2006). Because there was no reversible error, the first prong of *Kelly* has not been met, and "we need not reach the question of whether the instruction likely affected the outcome of the proceeding. [Cit.]" *Davis v. State*, supra at 762 (5) (a).

(b) The trial court instructed the jury that, although hands are not deadly weapons per se, they "may or may not be deadly weapons depending upon the manner in which they are used and the circumstances of the case." Appellant argues that this instruction erroneously set forth an alternate means of committing aggravated assault, because the indictment and another jury instruction did not use the phrase "deadly weapon" and instead utilized the statutory language "any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). However, this latter language is included in the phrase "deadly weapon" when that phrase is used as a general reference to the aggravating circumstance in OCGA § 16-5-21 (a) (2). *Pye v. State*, 274 Ga. 839, 841 (4) (561 SE2d 109) (2002). In charging that Appellant strangled the victims "with his hands, instrumentalities which, when used offensively against a person, are likely to result in serious bodily injury," "[t]he indictment thus alleged that [Appellant] used his hands as deadly weapons. We, therefore, find no error in the jury charge." *Hughes v. State*, 266 Ga. App. 203, 204 (2) (596 SE2d 697) (2004). Again, the first prong of *Kelly* is not met, and we need not consider the remainder of the *Kelly* test. *Davis v. State*, supra.

(c) Appellant complains that the trial court erred by failing to give the following portion of a pattern jury charge: "The State must also prove as a material element of aggravated assault, as alleged in this case . . . ." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 2.20.21. However, Appellant "made no request for any such instruction, and the trial court's charge adequately and correctly set out the law on the presumption of innocence and the State's burden of proof. [Cits.]" *Murphy v. State*, 267 Ga. 100, 101 (3) (475 SE2d 590) (1996). See also *Alexander v. State*, 285 Ga. 166, 167 (3) (675 SE2d 23) (2009). Moreover, " '[t]here is no requirement that

only verbatim pattern charges are permissible.' [Cit.]" *State v. Hobbs*, 288 Ga. 551, 552-553, fn. 4 (705 SE2d 147) (2011). Once again, therefore, "the first prong of the *Kelly* 'plain error' test is not met." *White v. State*, supra at 9 (2).

9. The trial court's denial of a motion for continuance for the defense to obtain two witnesses is also enumerated as error. "Since neither witness had been subpoenaed by the defense and counsel was unable to say where the witnesses were, we see no abuse of discretion in the denial of a continuance. [Cit.]" *Cain v. State*, 277 Ga. 309, 311 (3) (588 SE2d 707) (2003).

10. Appellant contends that trial counsel was ineffective in several instances. To succeed on any of these claims under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), "Appellant must show both that his counsel provided constitutionally deficient performance and that, but for this deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. [Cit.]" *Armour v. State*, 290 Ga. 553, 554 (2) (722 SE2d 751) (2012). "In reviewing the trial court's decision, ' "(w)e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Cit.)' [Cit.]" *Watson v. State*, 289 Ga. 39, 45 (12) (709 SE2d 2) (2011).

(a) Appellant complains of his attorney's failure to object to that portion of Appellant's recorded statement referring to his burglary conviction. However, trial counsel testified that he thought that there was no objection because the jury otherwise learned of Appellant's parole and probably because burglary is a nonviolent offense. Assuming that the reference to the burglary conviction reflected on Appellant's character, " 'the decision of whether to object when a defendant's character is placed in issue is (generally) a matter of trial tactics,' [cits.]," and Appellant has not shown that his attorney's failure to object "was an unreasonable tactical decision no competent attorney would have made under the same circumstances. [Cit.]" *Henderson v. State*, 285 Ga. 240, 243 (2) (d) (675 SE2d 28) (2009). See also *McKenzie v. State*, 284 Ga. 342, 346-347 (4) (a) (667 SE2d 43) (2008). As the statement about Appellant's burglary conviction avoided harmful speculation by the jury that Appellant's prior offense involved violence, "counsel's reasonable strategic decision does not amount to ineffective assistance. [Cit.]" *Brooks v. State*, 281 Ga. 14, 19 (3) (635 SE2d 723) (2006).

(b) Appellant also contends that trial counsel was ineffective in failing to object to the jury charge's use of the word "jury" instead of "injury" and to the omission from the charge of language from the pattern jury instructions on the burden of proof for an element of

aggravated assault. As discussed in Division 7 above, no reversible error occurred with respect to either issue, and Appellant therefore cannot succeed on these alternative claims that counsel's failure to object constituted ineffective assistance. *Howard v. State*, 288 Ga. 741, 747 (6) (707 SE2d 80) (2011). See also *Render v. State*, supra; *Lloyd v. State*, 214 Ga. App. 564, 569 (2) (448 SE2d 729) (1994).

(c) Appellant further complains of his trial counsel's failure either to measure the hole in the fence through which Appellant and Ms. Ziel passed or to request that the fecal material found on Ms. Wright's feet and hands be tested for DNA. Although Appellant argues that the DNA testing would have yielded a different suspect than Appellant, Ms. Wright was found in a dirty, disgusting shed used as a bathroom, and counsel reasonably concluded that testing the fecal material would not be helpful or exculpatory. Thus, counsel's decision was one of trial tactics and therefore does not demonstrate deficient performance. See *Lowe v. State*, 259 Ga. App. 674, 676 (2) (578 SE2d 284) (2003). Moreover, Appellant proffered no evidence that a DNA test on the fecal material would have rebutted the State's evidence. *Hunter v. State*, 294 Ga. App. 583, 585 (1) (669 SE2d 533) (2008). See also *Murrell v. Ricks*, 280 Ga. 427, 429 (627 SE2d 546) (2006). Indeed, because Appellant has failed to make any proffer of DNA evidence, it is impossible for him to show that it would have been favorable and thus that there is a reasonable probability that the outcome of his trial would have been different. *Baker v. State*, 259 Ga. App. 433, 436-437 (3) (a) (577 SE2d 282) (2003), overruled on other grounds, *Schofield v. Holsey*, 281 Ga. 809, 811-812 (II), fn. 1 (642 SE2d 56) (2007). Although Appellant argues that the fence measurement would have impeached Ms. Ziel by showing that the hole was too small for two people to have made it through together, Ms. Ziel did not testify that both she and Appellant went through at the same time, he conceded that they could go through one at a time, and counsel did not think the measurement relevant to Appellant's consent defense. Moreover, the jury viewed photographs of the hole in the fence, and Appellant never submitted any proffer of the measurement. Accordingly, Appellant wholly failed to prove either prong of the *Strickland* test. See *Lowe v. State*, supra; *Baker v. State*, supra.

(d) Appellant asserts that his attorney was ineffective in failing to subpoena certain witnesses. Counsel was apparently never given any information about one witness, and he determined that the others, who were allegedly alibi witnesses, were either unable to support an alibi defense or could not be located. Thus, " 'counsel's judgment and tactics were reasonable under the circumstances.' [Cit.]" *Dye v. State*, 266 Ga. App. 825, 830 (2) (c) (598 SE2d 95) (2004). Moreover, "no evidence in the record shows that [any of the witnesses]

would have agreed to testify or that [their] testimony actually would have been favorable to Appellant. [Cit.]" *Armour v. State*, supra at 555 (2) (b). Although some of the witnesses spoke to Appellant's investigator, their unsworn oral statements to the investigator are hearsay and therefore are not sufficient to carry Appellant's burden of proving that he was prejudiced by counsel's failure to call them at trial. *Manriquez v. State*, 285 Ga. 880, 881 (2) (684 SE2d 650) (2009); *Dye v. State*, supra.

> "(B)ecause [Appellant] neither called (these witnesses) to testify at the motion for new trial hearing nor presented a legally acceptable substitute for (their) direct testimony so as to substantiate (his) claim that (the witness[es]') testimony would have been relevant and favorable to (his) defense, it was impossible for [Appellant] to show there is a reasonable probability the results of the proceedings would have been different." [Cit.]

*Watson v. State*, supra at 46 (12) (c).
*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 25, 2012.

*Mark J. Nathan*, for appellant.
*Larry Chisolm, District Attorney, Ann M. Elmore, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General*, for appellee.