# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00649-CR

**Edward Dwayne Doyle, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO.2001-172, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

## O P I N I O N

A jury convicted Edward Dwayne Doyle for the offense of tampering with lottery equipment enhanced by four prior felony offenses. Tex. Gov't Code Ann. § 466.309 (West 1998). Doyle was sentenced to ten years' imprisonment and a $5000 fine. He now challenges the legal sufficiency of the evidence to support the jury's determination that he "tampered with" lottery equipment. We find the evidence legally sufficient to support the jury's determination beyond a reasonable doubt and affirm the judgment of conviction.

## BACKGROUND

On February 4, 2001, Edward Dwayne Doyle, James Sheppard, and Mary Climer were passing through Texas on Interstate 10. That evening they stopped at Luv's Truck Stop in

Luling. Doyle and his companions stayed at the truck stop for a few hours, and employees of the truck stop observed them playing the state lottery scratch-off and Cherry Master vending machines.[1] Doyle obtained a large number of Cherry Master tickets which he redeemed for a television and VCR before he left the store.[2]

Later that night, the assistant manager discovered that the scratch-off vending machine was out of lottery tickets. One employee who had worked at the truck stop for four years recalled that she had never before seen the lottery vending machine entirely sold out. When the manager opened the machine to restock the tickets, he discovered that the machine had $1261 less than it should have in view of the number of tickets that were issued that night. The manager also found a laminated $20 bill attached to a string or strip of tape inside the machine. Due to the suspicious circumstances, the manager viewed the surveillance camera footage from the previous night and saw Doyle and his companions redeeming an unusually large number of Cherry Master tickets. He warned the other employees to notify him if Doyle, Sheppard, or Climer returned to the store.

The next day, February 5, Doyle and Sheppard redeemed numerous lottery scratch-off tickets at two different K-Mart stores in San Antonio. Although they denied purchasing the tickets at K-Mart, after Sheppard left one of the stores, a clerk discovered that the lottery scratch-off vending machine had jammed due to some tape in its rollers; the tape was attached to a laminated $1 bill.

---

[1] Cherry Master is not a state lottery game. It is a machine owned by a private company. Points awarded for playing are translated into tickets, which can ultimately be redeemed for merchandise.

[2] According to the store manager, it is very difficult to accumulate a large number of tickets from the Cherry Master machine.

On February 6, Doyle and Sheppard returned to Luv's Truck Stop to play the Cherry Master machine. Although the Cherry Master machine did not give change, employees of the store saw Doyle remove both money and tickets from the machine. The employees called the police who arrived as the pair was leaving. James Stewart, a Luling Police Officer, arrived and observed a large number of lottery tickets scattered throughout Doyle's vehicle. Doyle was arrested and the subsequent search of his vehicle also revealed: a laminated $20 and $1 bill in the sun visor, an envelope containing a $20 bill cut lengthwise and re-taped, a briefcase containing plastic laminate and fishing wire, several electronic goods of the type available in exchange for Cherry Master tickets, and numerous lottery tickets in a trash bag.

The State charged Doyle with the felony offense of tampering with lottery equipment enhanced by four prior felony convictions. *See* Tex. Gov't Code Ann. § 466.309 (West 1998); Tex. Pen. Code Ann. § 12.42 (West 2003). Doyle was convicted by a jury. He pleaded true to the enhancement allegations, and the court sentenced him to 10 years' imprisonment and a $5000 fine. Doyle now challenges the legal sufficiency of the evidence to support the jury's finding that he "tampered with" lottery equipment.

## DISCUSSION

When reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1,7 (Tex. Crim. App. 2000). The jury as trier of fact is entitled to resolve any conflicts in the evidence, evaluate the credibility of the witnesses, and

3

determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642,647 (Tex. Crim. App. 1996).

Doyle does not challenge the accusation that he used laminated money to obtain lottery tickets without actually paying for them, but he denies that doing so constitutes "tampering" within the meaning of section 466.309. Therefore, resolution of Doyle's legal insufficiency argument depends upon our interpretation of "tampers with" in section 466.309.[3] Doyle argues that because "tampers with" is not defined in section 466.309, it is ambiguous, and the common usage of the term is overly broad and could potentially lead to absurd results. He urges us to adopt a narrow definition of "tampering" which proscribes only that conduct which affects the lottery equipment's physical integrity or ability to function.

To support his position that "tampers with" is limited to conduct that disables or compromises the physical integrity of the lottery equipment, Doyle invokes the canons of statutory interpretation *noscitur a sociis* and *ejusdem generis* for the proposition that the words following "tampers with" in section 466.309, namely "damages, defaces, or renders inoperable," serve to define and limit the meaning of "tampers with" for the purposes of the statute. *Noscitur a sociis* simply dictates that "the coupling of words together shows that they are to be understood in the same sense. And where the meaning of any particular word is doubtful or obscure, . . . the intention of the party who has made use of it may frequently be ascertained and carried unto effect by looking at the

---

[3] Texas Government Code section 466.309 provides in relevant part:

(a)  A person commits an offense if the person intentionally or knowingly tampers with, damages, defaces, or renders inoperable any vending machine, electronic computer terminal, or other mechanical device used in a lottery game. . . .

4

adjoining words." *Neal v. Clark*, 95 U.S. 704, 709 (1877). *Ejusdem generis*, on the other hand, proposes that when "particular words of description are followed by general terms the latter will be regarded as referring to things of a like class with those particularly described." *U.S. v. Mescall*, 215 U.S. 26, 31 (1909). Although both canons are useful means of clarifying ambiguous statutory language, neither is applicable here.

First, with respect to *noscitur a sociis*, "[t]hat a word may be known by the company it keeps is . . . not an invariable rule, for the word may have a character of its own not to be submerged by its association." *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923). Indeed, while "tampers with" is listed with words such as "damages" and "defaces" in section 466.309, its meaning is distinct and thus should not be absorbed or tempered by the other words in the list. Furthermore, the conduct "renders inoperable," is not necessarily related to "damages" or "defaces." Tex. Gov't Code Ann. § 466.309(a). It also defines an entirely distinct category of conduct prohibited by the statute. Some types of conduct may render the lottery equipment inoperable but may not damage or deface the equipment. For example, by jamming the rollers on at least one of the lottery machines with tape and removing virtually all of the tickets from another, Doyle temporarily rendered the lottery equipment inoperable but did not permanently damage it. Perhaps more importantly, *noscitur a sociis* is reserved for language that is ambiguous or obscure, "[b]ut here the meaning of the words considered severally is not in doubt . . . . The meaning of the several words, standing apart, being perfectly plain, what should be done is to apply them distributively. . . . " *Russell*, 261 U.S. at 520.

5

Likewise, *ejusdem generis* is an inappropriate interpretive device in this statute because we do not have particular terms that define more general terms. All of the terms used are equally general. None of them defines or limits any of the others. Instead they each stand as distinct examples of conduct prohibited by section 466.309 of the Government Code.

Applying *noscitur a sociis* or *ejusdem generis* to narrow the applicability of "tampers with" would be inconsistent with the legislative history of the statute. Because "tampers with" was added after the original language, "damages, defaces, or renders inoperable," was drafted, it seems clear that the legislature meant to expand the scope of proscribed conduct rather than limit it. Given our commitment to interpret statutory language "according to the rules of grammar and common usage," Tex. Gov't Code Ann. § 311.011(a) (West 1998), we cannot read "tampers with" as limited by "damages, defaces, or renders inoperable." Had the legislature intended "damages, defaces, or renders inoperable" to define "tampers with," rather than including all four terms in a disjunctive phrase, they would have made it an offense to tamper with lottery equipment *by* damaging, defacing, or rendering inoperable. Alternatively, they could have prohibited tampering with lottery equipment *and* damaging, defacing, or rendering it inoperable. Instead, the legislature chose to add "tampers with" to the list of prohibited actions, each of which constitutes an offense under section 466.309.

Because "tampers with" is not defined by the terms accompanying it in the statute, we must determine whether Doyle's conduct, inserting a laminated bill into a lottery machine and then retrieving the bill once the machine issued a ticket, constitutes the offense of tampering with lottery equipment. Absent a definition in the statute, a word will have its plain meaning unless applying that meaning would produce an absurd consequence, or if the language is ambiguous.

6

*Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Whether the evidence establishes that

Doyle tampered with lottery equipment depends upon the precise meaning of "tampers with" in the

context of the statute, but that does not make "tampers with" ambiguous or overly broad, nor would

the common usage of the term lead to absurd results. In fact, because the legislature declined to

provide a definition, we must assume that it intended us to construe the statute using the common

meaning of the term.

Therefore, we look to the common meaning of "tampers with" to determine whether

Doyle's conduct is the type proscribed by the statute. Black's Law Dictionary defines "tamper" as

"to meddle so as to alter (a thing); esp., to make changes that are illegal, corruptible, or perverting"

and "to interfere improperly; to meddle." Black's Law Dictionary 1468 (7th ed. 1999). Black's

definition seems to describe Doyle's conduct. Although it is arguable whether he altered the machine,

it seems clear that he interfered improperly and meddled with it. He certainly perverted or corrupted

the purpose of the machine by forcing it to issue tickets without collecting funds. Additionally, a

definition of "tampers with" that is broad enough to include manipulation which interferes with the

proper functioning of lottery equipment without physically damaging it is supported by the

legislature's use of the term in other statutes addressing similar offenses.

"Tamper" is a term used in numerous statutes in Texas,[4] but section 28.03 of the penal

code prohibiting criminal mischief is most analogous to tampering with lottery equipment. *Compare*

---

[4] *See* Tex. Bus. & Com. Code Ann. § 17.46 (deceptive trade practices unlawful) (West 2002); Tex. Fam. Code Ann.§ 6.501(temporary restraining order) (West 1998); Tex. Gov't Code Ann. §§ 62.003 (construction and security of jury wheel); 466.309 (tampering with lottery equipment) (West 1998); Tex. Health & Safety Code Ann. §§ 142.0063 (possession of certain

Tex. Gov't Code Ann. § 466.309 (West 1998) *with* Tex. Pen. Code Ann. § 28.03 (West 2003).

Section 28.03 is routinely employed in cases where defendants are charged with tampering with gas

or electrical meters, tapping into gas or electrical supplies, or interfering with telephone service. *See*

*Williams v. State*, 596 S.W.2d 862 (Tex. Crim. App. 1980) (interfering with telephone service);

*Howlett v. State*, 994 S.W.2d 663 (Tex. Crim. App. 1999) (diverting gas from flowing through meter

gauge); *Robertson v. State*, 888 S.W.2d 493 (Tex. App.—Amarillo 1994, pet ref'd) (diverting

electricity from electrical wires); *Edmonson v. State*, 747 S.W.2d 8 (Tex. App.—El Paso 1988, pet

---

dangerous drugs), 171.014 (informational materials), 242.852 (criminal offense), 382.202 (vehicle emissions inspection), 382.207 (inspections stations; quality control audits), 431.323 (circumstances under which donated drugs may be accepted and dispensed), 481.159 (disposition of controlled substance property or plant) (West 2001), §§ 504.002 (offense: use of equipment), 825.008 (tampering with traps; criminal penalty), 841.082 (commitment requirements) (West 2003); Tex. Nat. Res. Code Ann §§ 85.385 (administrative penalty), 85.389 (criminal penalty), 88.092 (prohibited interference with access and inspection), 91.143 (false applications, reports, and documents and tampering with gauges), 201.041 (vandalism) (West 2001); Tex. Occ. Code Ann. §§ 165.154 (tampering with governmental record; perjury offenses), 562.1085, (unused drugs returned by certain pharmacists), 1805.053 (serial number) (West 2003); Tex. Pen. Code Ann. §§ 22.09 (tampering with consumer product), 28.03 (criminal mischief), 28.07 (interference with railroad property), 31.11 (tampering with identification numbers), 31.12 (theft of or tampering with multichannel video or information services), 37.09 (tampering with or fabricating physical evidence), 37.10 (tampering with governmental record) (West 2003); Tex. Transp. Code Ann. §§ 472.021 (tampering with warning devices); 521.2475 (ignition interlock device evaluation), 522.030 (content of license), 548.603 (fictitious or counterfeit inspection certificate or insurance document), 727.002 (tampering with odometer) (West 1999); Tex. Water Code Ann. §§ 7.148 (failure to properly use pollution control measures), 7.162 (violations relating to hazardous waste), 7.181 (improper use of monitoring device) (West 2000); Tex. Rev. Civ. Stat. Ann. art. 1446a, § 5 (disruption of gas, electric, or water by picketing, threats, or intimidation) (West Supp. 2003); Tex. R. Jud. Admin. 12, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (public access to judicial records) (West 1998); Tex. Crim. Proc. Ann. art. 18.21, § 6 (pen registers and trap and trace devices; access to stored communications; mobile tracking devices) (West 1977), arts. 49.05(f) (time and place of inquest; removal of property and body from place of death ), 49.22(c) (sealing premises of deceased), 64.03(a)(1)(A)(ii) (requirements; testing) (West 1979).

ref'd) (diverting gas from public gas line). In most cases, the defendant has not damaged or destroyed the meter devices, cables, pipes, or other utility equipment but has interfered with the proper functioning of the equipment by accessing electricity or gas without paying for it. Nevertheless, those defendants who access public utilities while avoiding proper charges have unlawfully "tampered with the tangible property of the owner" in violation of section 28.03, whether or not they cause physical damage to any equipment.

As used in section 28.03, "tampers with" includes conduct which does not permanently damage or destroy property.[5] First, subsection (a) of the criminal mischief statute lists "tampering

---

[5] Texas Penal Code section 28.03 provides in relevant part:

(a)  A person commits an offense if, without the effective consent of the owner:

(1)  he intentionally or knowingly damages or destroys the tangible property of the owner;

(2)  he intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person; . . . .

* * *

(c)  For the purposes of this section, it shall be presumed that a person who is receiving the economic benefit of public communications, public water, gas, or power supply, has knowingly tampered with the tangible property of the owner if the communication or supply has been:

(1)  diverted from passing through a metering device; or

(2)  prevented from being correctly registered by a metering device; or

(3)  activated by any device installed to obtain public communications, public water, gas, or power supply without a metering device.

9

with property" and "damaging or destroying property" as separate methods of committing an offense. *See* Tex. Pen. Code Ann. § 28.03(a)(1) and (2) (West 2003). Furthermore, the criminal mischief statute gives three examples of conduct that constitutes tampering:

> [I]t shall be presumed that a person who is receiving the economic benefit of public communications, public water, gas, or power supply, has knowingly tampered with the tangible property of the owner if the supply has been: (1) diverted from passing through a metering device; or (2) prevented from being correctly registered by a metering device; or (3) activated by any device installed to obtain public communications, public water, gas, or power supply without a metering device.

Tex. Pen. Code Ann. § 28.03(c) (West 2003). The conduct reflected in each of the three examples avoids payment for a benefit received, but does not necessarily result in permanent damage or physical alteration. Thus, for the purposes of section 28.03(c), tampering includes conduct which does not disable or destroy the equipment, but does subvert the purpose of the device—to assess charges for services rendered and products consumed.

Case law applying section 28.03 confirms a broad construction of the term "tampers with." In *Howlett v. State*, Howlett diverted gas into his home before it went through the metering device. 994 S.W.2d at 664. Similarly, in *Robertson v. State*, Robertson tapped directly into the electrical lines running near his house in order to avoid being charged for electricity by his meter. 888 S.W.2d at 494. Doyle's conduct resembles, in principle, the actions of Howlett and Robertson. Preventing a meter from properly registering use to assess charges is indistinguishable from inserting trick money to obtain lottery tickets without actually paying for them. In another analogous case, *Williams v. State*, Williams interrupted another man's telephone service by tampering with the wires. 596 S.W.2d at 864. Drawing on the practice commentary accompanying section 28.03, the court of

10

criminal appeals construed "tampers with" to include "conduct that falls short of damaging the property but nevertheless interferes with the owner's proprietary rights or abuses the property in a way that diminishes its value." *Id.* at 865. The court of criminal appeals' definition of "tampers with" also describes Doyle's conduct. Although he did not permanently damage the lottery machine, he interfered with the proprietary rights of Luv's Truck Stop and the lottery commission and diminished the machine's value. By taking virtually all of the tickets without paying, he made it impossible for paying customers to buy tickets for several hours. Without tickets to sell, the lottery machine is virtually worthless. Though the machine was not physically damaged, Doyle's conduct interfered with the owners' proprietary rights and diminished the value of the machine, fulfilling the definition of "tampers with" in *Williams*. *Id.*

By including "tampering" and "rendering inoperable" as prohibited conduct, the legislature sought to deter more than physical damage of lottery equipment; it also wanted to protect the integrity of the lottery itself. Although Doyle did not compromise the physical integrity of the lottery machine, the effect is the same as if he pried the machine open and took the tickets. The purpose of lottery machines is to issue tickets in exchange for money, which translates into revenue for the State of Texas. We hold that meddling with lottery machines in a way that subverts that process is tampering with lottery equipment in violation of Texas Government Code section 466.309 regardless of whether any lasting or physical alteration occurs. Furthermore, we hold that Doyle's conduct rendered the lottery equipment inoperable by jamming the rollers with tape and emptying all the tickets in the machine. We overrule Doyle's sole point of error.

11

## CONCLUSION

Under the common usage definition of "tampers with" and "renders inoperable," we find the evidence legally sufficient and affirm the judgment of conviction.

_____

Bea Ann Smith

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   October 7, 2004

Publish