**Stephen Shane SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–04–00102–CR.**

Court of Appeals of Texas,
Waco.

March 23, 2005.

Sandy S. Gately, Gatesville, for appellant.

B.J. Shepherd, Hamilton County Dist. Atty., Martin L. Peterson, Hamilton County Asst. Dist. Atty., Meridian, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Stephen Smith was convicted by a jury of tampering with equipment manufactured and used to hold anhydrous ammonia. TEX. HEALTH & SAFETY CODE ANN. § 504.002 (Vernon 2003). Stephen was tried jointly with his brother, Cody Smith.[1] Stephen was subject to punishment for the offense under section 7.02 of the Penal Code. TEX. PEN.CODE ANN. § 7.02 (Vernon 2003). He was sentenced to seven years' confinement. He appeals on two issues: (1) the evidence was insufficient to prove anyone tampered with anhydrous ammonia equipment; and (2) the trial court erred in failing to grant his motion for mistrial.

We will overrule the issues and affirm the judgment.

## BACKGROUND

An employee of Watson Farm & Ranch Supply testified that one morning he saw a pickup truck on the property. He saw a man get out the passenger side of the

1. Cody Smith appealed to this court on identical issues. *See Smith v. State,* No. 10–04– 00103–CR, 2005 WL 675590 (2005).

truck and run toward some anhydrous ammonia tanks. He then saw a burst of white gas. The man returned to the pickup which then left the property. Another employee also testified to seeing the cloud of white gas and the man running back to the pickup truck carrying a "bucket." The manager of the property was alerted and pursued the truck. The truck was eventually stopped by a Hamilton County deputy and the driver and passenger were placed in custody. The driver of the vehicle was Stephen Smith, and the passenger was Cody Smith.

**"Tampering"**

Stephen argues that the evidence is insufficient to prove he tampered with anhydrous ammonia equipment. Although he does not specify, he seems to be arguing legal, rather than factual, sufficiency. He argues that the acts testified to at trial do not constitute "tampering" within the meaning of section 504.002 of the Health and Safety Code. When reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Resolution of Stephen's legal insufficiency argument depends upon our interpretation of "tampers with" in section 504.002. That section provides, in relevant part, that a person commits an offense if he "tampers with equipment manufactured and used to hold, apply, or transport anhydrous ammonia without the express consent of the owner of the equipment." TEX. HEALTH & SAFETY CODE ANN. § 504.002. The term "tampers with" is not defined by the statute. Absent a definition in the statute, a word will have its plain meaning unless applying that meaning would produce an absurd consequence, or if the language is ambiguous. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Thus we look to the common meaning of term. Black's Law Dictionary defines "tamper" as "to meddle so as to alter (a thing); esp., to make changes that are illegal, corruptible, or perverting" and "to interfere improperly; to meddle." BLACK'S LAW DICTIONARY 1494 (8th ed.2004).

Stephen argues that because there was no testimony that the tank was damaged, altered, or made inoperable, no tampering occurred. However, the evidence at trial showed that Cody caused the tank to release its contents. His conduct was sufficient to constitute improper interference with and meddling with the tank.

The use of the term "tamper" in section 504.002 is analogous to the use of that term in section 28.03 of the Penal Code, prohibiting criminal mischief, and in section 466.309 of the Government Code, prohibiting tampering with lottery equipment. TEX. PEN.CODE ANN. § 28.03 (Vernon 2004–05); TEX. GOV'T CODE ANN. § 466.309 (Vernon 2004). Courts applying section 28.03 have construed the term "tampers with" broadly in cases where the defendants are charged with tampering with gas or electric meters, tapping into gas or electrical supplies, or interfering with telephone service. *See Williams v. State,* 596 S.W.2d 862 (Tex.Crim.App.1980) (interfering with telephone service); *Howlett v. State,* 994 S.W.2d 663 (Tex.Crim.App.1999) (diverting gas from flowing through meter gauge); *Robertson v. State,* 888 S.W.2d 493 (Tex. App.-Amarillo 1994, pet. ref'd) (diverting electricity from electrical wires); *Edmondson v. State* 747 S.W.2d 8 (Tex. App–El Paso 1988, pet. ref'd) (diverting gas from a public gas line). In *Williams,* the Court of Criminal Appeals construed "tampers with" to include "conduct that falls short of damaging the property but nevertheless interferes with the owner's proprietary rights or abuses the property

in a way that diminishes its value." 596 S.W.2d at 865. "Tampers with" under section 466.309 has been interpreted to include inserting trick money to obtain lottery tickets without paying for them. *Doyle v. State*, 148 S.W.3d 611 (Tex.App.-Austin 2004, pet. ref'd.).

The Legislature's intent in section 504.002 was not merely to deter physical damage to anhydrous ammonia containers but to prevent the release of a dangerous gas and to assist law enforcement in fighting illegal production of methamphetamine. By meddling with the tank so as to release anhydrous ammonia gas, Cody tampered with equipment used to hold anhydrous ammonia without the consent of the owner of that equipment. Finding the evidence legally sufficient, we overrule this issue.

**Undisclosed Evidence**

██ Stephen argues that the trial court erred in failing to grant his motion for mistrial because the State failed to disclose the loss of critical evidence. The evidence at issue was an "Igloo" container. An officer testified that he recovered the container in a bush on the side of the road, that the container was missing a handle, and that a handle fitting the container was found inside the truck. The State offered a photograph of the container, but the container itself had been lost. Stephen argued at trial and argues on appeal that the container was *Brady* evidence.

██ To find a *Brady* violation, an appellant must show that: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex.Crim.App. 2002). Evidence is material if there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. *Id.* "The mere possibility that an item of undis-

closed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* Whether the evidence is material is viewed in the context of the overall strength of the State's case. *Id.* at 613.

Stephen has not met his burden of showing that, in light of all of the evidence, it is reasonably probable that the outcome would have been different had the container been available. He argues that if the actual container had been produced, he would have been able to counter the officer's testimony that the handle found in the truck fit the container or demonstrate that neither Cody's nor Stephen's fingerprints were on the container. Assuming without deciding that the container was evidence favorable to the defense, the testimony regarding the container was not critical to the prosecution's case. The identification of Stephen and Cody Smith as the persons on the Watson property was established by identification of the blue pickup truck with a roll of carpet in the back and an officer's testimony that Cody smelled strongly of anhydrous ammonia, that he had a runny nose, and that his eyes were red. Thus, even if the defense were able to disprove any connection between the Smiths and the "Igloo" container, it is unlikely that the outcome of the case would have been different.

Viewed in the context of the State's overall case, the lost container was not material. The trial court thus did not abuse its discretion in denying the motion for mistrial. We overrule this issue.

**CONCLUSION**

Having overruled the issues, we affirm the judgment.