S11G0335. DOE v. THE STATE.
(725 SE2d 234)

MELTON, Justice.

Over the course of several nights in early 2004, Curtis Lee Doe stole approximately $95 in scratch-off lottery tickets from the TimeSaver #86 convenience store in Glennville, Georgia. He stole the tickets by leaning over a store counter and tearing the tickets from their dispenser. He scratched the tickets to see if he had won a prize, and, when he saw that he had not, he threw all of the tickets away.

Doe was indicted for "Falsely Uttering a State Lottery Ticket"

under OCGA § 50-27-27. Specifically, Doe was accused of taking approximately 65 scratch-off tickets "with the intent to influence the winning of Georgia Lottery prizes by tampering with lottery materials." See OCGA § 50-27-27 (b). Following a jury trial, Doe was found guilty, and, as a recidivist, he was sentenced to five years imprisonment. The Court of Appeals affirmed Doe's conviction. *Doe v. State*, 306 Ga. App. 348 (702 SE2d 669) (2010). This Court granted Doe's petition for a writ of certiorari to determine whether the Court of Appeals erred in finding that the theft of lottery tickets from a lottery ticket dispenser was sufficient to constitute tampering with lottery materials within the meaning of OCGA § 50-27-27. For the reasons that follow, we affirm.

Our decision in this case turns on the proper interpretation of OCGA § 50-27-27 (b). The statute provides:

> Any person who influences or attempts to influence the winning of a prize through the use of coercion, fraud, deception, or tampering with lottery equipment or materials shall be punished by a fine not to exceed $50,000.00 or by imprisonment for not longer than five years or both.

In construing this statute,

> we apply the fundamental rules of statutory construction that require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

(Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003).

Pursuant to the Georgia Lottery for Education Act (of which OCGA § 50-27-27 is a part), the Georgia Legislature has expressly provided "[t]hat lottery games shall be operated and managed in a manner which provides continuing entertainment to the public, maximizes revenues, and ensures that the lottery is operated with integrity and dignity." OCGA § 50-27-2 (3). It is with this express legislative intent in mind that we must discern the plain meaning of the term "tampering" in OCGA § 50-27-27. See *Slakman*, supra, 277 Ga. at 191 (At the same time that we construe a statute according to its terms, giving its words their plain and ordinary meaning, we must also "seek to effectuate the intent of the legislature").

According to Black's Law Dictionary (9th ed. 2009), "tampering" consists of "1. [t]he act of altering a thing; esp., the act of

illegally altering a document or product, such as written evidence or a consumer good … [or] 2. [t]he act or instance of engaging in improper or underhanded dealings, esp. in an attempt to influence." Here, by leaning over a store counter, tearing lottery tickets from their dispenser without paying for them, and scratching the tickets to see if he had won a prize, Doe did indeed engage in underhanded dealings in an attempt to influence the winning of a lottery prize. This activity would fall within the plain meaning of the term "tampering." Id. See also *Doyle v. State*, 148 SW3d 611, 617 (Tex. App. 2004) ("tampering" with lottery equipment consists of "meddling with lottery machines in a way that subverts [the machine's] process [of issuing tickets in exchange for money]"). Indeed, through his actions, Doe tampered with the lottery materials here in a way that forever changed the odds of winning for paying customers (because the tickets that he tore from the dispenser and scratched off could no longer be sold), and directly influenced the potential winning of lottery prizes by future customers. In this regard, if, rather than taking the tickets by tearing them from their dispenser, Doe instead had merely punched holes in them or had otherwise made the tickets unusable in his illicit attempt to win a prize, there would be no difficulty in concluding that he "tampered" with the tickets. Here, Doe did much more than that. He tampered with the ticket dispenser by tearing the tickets from their place of origin (which in itself changed the odds of winning for future paying customers), and he continued his campaign of tampering by scratching off his stolen tickets and discarding them when he realized that his improper efforts to influence the winning of a lottery prize had failed.

In short, if Doe's activity did not constitute "tampering" within the meaning of OCGA § 50-27-27, the express intent of the Legislature that State lottery revenues be maximized and that the lottery be operated with integrity and dignity would be frustrated. OCGA § 50-27-2. We therefore decline to adopt such an interpretation of OCGA § 50-27-27, as it would "emasculate the purpose of the statute [and] impair the intention of the legislature." *Andrews v. State*, 8 Ga. App. 700, 701 (70 SE 111) (1911). By tampering with lottery materials in the manner that he did, Doe could properly be found guilty of violating OCGA § 50-27-27. See *Doyle*, supra, 148 SW3d at 617 (although defendant did not physically alter lottery ticket dispenser, he was properly found guilty of tampering with lottery equipment where he frustrated purpose of lottery ticket dispenser to issue tickets in exchange for money (and to generate revenue for the State of Texas) by inserting a laminated bill into the ticket dispenser to get the machine to repeatedly dispense lottery tickets to him without paying for them).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 5, 2012.

*Craig T. Pearson*, for appellant.
*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.
*Samuel S. Olens, Attorney General, R. O. Lerer, Deputy Attorney General, William W. Banks, Jr., Senior Assistant Attorney General, Julie A. Jacobs, Assistant Attorney General*, amici curiae.