**FOURTH DIVISION
DOYLE, P. J.,
MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 30, 2013**

# In the Court of Appeals of Georgia

A13A1427. HARRIS v. THE STATE.                           DO-054 C

DOYLE, Presiding Judge.

Johnny Eugene Harris was convicted on a multi-count indictment for violating the Georgia Racketeer Influenced and Corrupt Organizations Act[1] ("RICO"), burglary,[2] theft by taking,[3] theft by deception,[4] forgery in the first degree,[5] and criminal trespass.[6] Following the denial of his motion for new trial, he appeals,

---

[1] OCGA § 16-14-4 (a).

[2] OCGA § 16-7-1 (b).

[3] OCGA § 16-8-2.

[4] OCGA § 16-8-3 (a).

[5] OCGA § 16-9-1 (b).

[6] OCGA § 16-7-21 (b) (1).

contending that the trial court erred because (1) the evidence was insufficient to support a guilty verdict on (a) theft by taking, (b) burglary, (c) theft by deception, and (d) certain RICO violations; (2) he was prohibited from arguing that he lacked criminal intent; (3) his special demurrer was erroneously denied, (4) certain jury charges were erroneously omitted; and (5) certain jury charges were incorrectly included. For the reasons that follow, we affirm.

Construed in favor of the verdict,[7] the evidence shows that Harris devised and engaged in a scheme whereby he and others would identify vacant houses and, without permission or knowledge of the rightful owner, Harris or his accomplice would make repairs, change the locks, and rent the house to tenants. They presented prospective tenants with residential lease documents falsely purporting to have authority to rent the property. Harris and his accomplices also convinced others facing foreclosure to enter into a Candidacy Agreement, whereby the victim would pay Harris's company[8] in exchange for a false promise to find them another home.

---

[7] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[8] Harris's company had various names including New Life Granted, New Life Holdings, or Georgia House Trust.

2

The scheme involved 14 homes in which neither Harris nor his company held any property interest.

After police investigated the scheme, Harris and others were charged in a 50-count indictment with RICO violations, burglary, theft by taking and deception, forgery, and criminal trespass. A jury found Harris guilty on each count, and the trial court sentenced him to serve 40 years, merging several counts. Following the denial of his motion for new trial, Harris filed this appeal.

1. (a) Harris first contends that the evidence was insufficient to prove felony theft by taking because the State failed to show asportation, intent, or that the value taken was greater than $500.

(i) *Asportation.* OCGA § 16-8-2 defines the theft by taking offense as follows: "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." Based on common law principles, Harris reads aportation into this definition as an essential element of theft in all cases, and argues that he actually "took" nothing because the property involved was real property which remained in its original place at all times. But this argument is belied by the statutory

3

definition of the offense, which may be committed "*regardless of the manner in which the property is taken or appropriated*."[9] Thus, we have held that "[t]he word 'theft' is not, like 'larceny,' a technical word of art with narrowly defined meaning, but a word of general and broad connotation, *covering any criminal appropriation of another's property to the taker's use*."[10] The statute does not define the term "appropriate," but we note the definition in Black's Law Dictionary: "[t]o make a thing one's own . . . to exercise dominion over an object to the extent, and for the purpose, of making it subserve one's own proper use or pleasure."[11] In this case, the evidence authorized a finding that Harris, without permission from the rightful owner, made use of real property by charging rent to tenants. This unauthorized exercise of dominion over the real property was sufficient to support his conviction for theft by taking.

---

[9] (Emphasis supplied.) OCGA § 16-18-2.

[10] (Punctuation omitted; emphasis supplied.) *Ruppert v. State*, 284 Ga. App. 456, 458 (1) (a) (643 SE2d 892) (2007).

[11] Black's Law Dictionary (6th ed. 1990). See also *Doe v. State*, 290 Ga. 667, 668 (725 SE2d 234) (2012) ("In construing [a] statute, we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning. . . .").

(ii) *Intent.* Harris also argues that, based on evidence that he was willing to return the property if the rightful owner ever inquired, he lacked intent to steal the properties. But "regardless of whether [Harris] intended to take the [properties] and withhold [them] permanently, his intent to take [them] for his own temporary use without the owner[s'] authorization evinces an intent to commit a theft. Once criminal intent at the time of taking is proved, it becomes irrelevant whether the deprivation is permanent or temporary."[12]

(iii) *Value.* Based on his argument that the State failed to prove that he took the real property, Harris argues that the State failed to prove that the property was valued at more than $500.[13] But as shown above, the State did not fail to prove his theft of the real property, and the evidence supports a finding that it was worth more than $500.

(b) Harris also challenges the sufficiency of the evidence with respect to burglary, arguing that the failure to prove the theft shows that he lacked the intent to

---

[12] (Punctuation omitted.) *Smith v. State*, 172 Ga. App. 356, 357 (2) (323 SE2d 257) (1984).

[13] See OCGA § 16-8-12 (a) (1) (2012).

5

commit a felony or theft in the premises, as required by the statutory definition of burglary.[14] Based on our holdings above, this argument fails.

(c) Harris likewise challenges the evidence showing theft by deception, arguing that the people to whom he rented the homes received full value for the money they paid him. Nevertheless, under OCGA § 16-8-3 (b),

> [a] person deceives if he intentionally: (1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; (2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed; (3) Prevents another from acquiring information pertinent to the disposition of the property involved; (4) Sells or otherwise transfers or encumbers property intentionally failing to disclose a substantial and valid known lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not a matter of official record; or (5) Promises performance of services which he does not intend to perform or knows will not be performed.

Here, the evidence showed that Harris deceived the tenants by claiming that he had authority to rent the premises when he did not, and this claim led the tenants to make payments to Harris under a false impression. Accordingly, this argument fails.

---

[14] See OCGA § 16-7-1 (b).

(d) Harris also argues that the evidence failed to support his RICO convictions because the underlying acts were not proved. In light of our conclusions above, this argument presents no basis for reversal.

2. Prior to trial, the State moved in limine to prevent Harris from arguing that he lacked criminal intent because he believed he was authorized under various civil theories to take over the properties he believed to be abandoned. The trial court granted the motion, ruling that Harris could refer to the properties as "vacant," but not "abandoned," and he could not proffer his mistaken belief of civil law to justify his actions. In two enumerations, Harris assigns this as error.

We note that Harris was allowed to argue that he lacked criminal intent based on his belief that he could "rehabilitate" the vacant properties and based on his behavior in openly advertising and posting notices announcing his intentions with respect to the properties. Based on this, Harris's counsel argued that "[t]hey actually believed what they were doing was legitimate." Therefore, Harris was not prohibited from arguing that he lacked criminal intent based on his subjective belief and as manifested by his actions.[15]

---

[15] The State, in turn, pointed out that Harris prevented his prospective lessees from recording any documents in the public record.

7

Furthermore, "[a]ll citizens are presumed to know the law, and ignorance of the law excuses no one."[16] Harris's theories on civil law were mistaken, and the trial court's ruling preventing him from presenting those incorrect legal theories to the jury was not reversible error based on the record before us.[17]

3. Harris next argues that the trial court erred by denying his special demurrers, arguing that the time-frame listed in the indictment, October 1, 2010 to November 21, 2011, was too broad. But the dates listed corresponded with the operation of Harris's company and many of the acts occurred during a time frame not known to the State.

When reviewing a post-conviction appeal of the court's pre-trial ruling,

the standard of review occasioned by the trial court's denial of a special demurrer is harmless error; the question [is] whether the defense was prejudiced by the incorrect form. Specifically, the relevant inquiry is

---

[16] *Henry v. State*, 295 Ga. App. 758, 760 (673 SE2d 120) (2009).

[17] See generally *Mincey v. State*, 303 Ga. App. 257, 257-258 (692 SE2d 809) (2010) ("A defendant's ignorance of the fact that he was violating the law does not relieve him of criminal intent if he intended to do the act that the legislature prohibited. Criminal intention may be found from the circumstances connected with the act for which the accused is prosecuted.") (footnote omitted); *Taylor v. State*, 233 Ga. App. 221, 222 (1) (504 SE2d 57) (1998) ("Failure to give a charge on mistake of fact is not error where the evidence shows that a party has made a mistake of law.") (punctuation omitted).

whether the failure to narrow the range of dates alleged in the indictment materially affected [Harris's] ability to present a defense.[18]

Here, Harris has pointed to no specific harm to his ability to present his defense. The indictment informed him of the specific properties at issue and the conduct alleged to be unlawful. Harris does not show how his investigation or defense preparation was hindered by the indictment as written; therefore, this enumeration presents no basis for reversal.[19]

4. Harris also challenges the trial court's refusal to give certain requested jury charges.

(a) *Mistake of fact.* As discussed in Division 2, Harris urged certain mistaken civil theories as defenses. But Harris's understanding of those civil law concepts was mistaken, and "[f]ailure to give a charge on mistake of fact is not error where the evidence shows that a party has made a mistake of law."[20]

---

[18] (Footnote omitted.) *Howard v. State*, 281 Ga. App. 797, 799 (1) (637 SE2d 448) (2006).

[19] See id.

[20] *Taylor*, 233 Ga. App. at 222 (1).

(b) *Theft by taking.* Harris unsuccessfully requested the pattern jury charge addressing asportation, which charge states that "the slightest change of location. . . is sufficient carrying away or removal."[21] But the trial court correctly gave the pattern charge that tracks the statutory language and fully describes the offense. "A defendant is not entitled to a jury charge on legal issues which are irrelevant, not tailored to the evidence[,] or factually inapplicable. In order to have reversible error, there must be harm as well as error."[22] Accordingly, this argument fails.

(c) *Other charges pertaining to civil or real property law.* Without citing any legal authority, Harris generically repeats that he was entitled to jury charges on certain concepts of civil and real property law. But as discussed above, those theories were not correct statements of law tailored to the evidence in this case. Accordingly, we discern no reversible error.[23]

5. Finally, Harris contends that the trial court erred by instructing the jury as to certain charges that he did not challenge until his post-trial motion for new trial.

---

[21] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.64.15 (4th ed.).

[22] *Wicks v. State*, 278 Ga. 550, 553 (5) (604 SE2d 768) (2004).

[23] See id.

When an appealing party properly asserts an error in the jury instructions that were not challenged at trial, OCGA § 17-8-58 (b) requires the appellate court to conduct a review under the plain error standard.[24] "[T]he hurdle to establishing plain error is high,"[25] and the party asserting it must demonstrate the following:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[26]

Harris fails to meet any of these criteria. In a one-sentence, conclusory argument, he asserts that the challenged charges "would unduly influence and prejudice the jury." Harris does not articulate how the charges deviated from a legal

---

[24] See *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

[25] Id. at 32, n. 2.

[26] (Punctuation omitted.) Id. at 33 (2) (a).

11

rule or manifested an obvious error. We have reviewed the charges and conclude that they are correct statements of law tailored to the evidence, and as such, this enumeration fails.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*