**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 26, 2014

# In the Court of Appeals of Georgia

A14A0440. GORDON v. THE STATE.

RAY, Judge.

A jury convicted Andre Gordon of child molestation (OCGA § 16-6-4 (a) (1)), aggravated sexual battery (OCGA § 16-6-22.2), rape (OCGA § 16-6-1 (a) (1)), and incest (OCGA § 16-6-22 (a) (6)). Gordon was sentenced as a recidivist under OCGA § 17-10-7 to 20 years each for child molestation, aggravated sexual battery, and incest, to run consecutively to each other and concurrently with his sentence of life imprisonment without the possibility of parole for rape. He appeals the denial of his motion for new trial, arguing that (1) the evidence was insufficient to sustain his convictions for aggravated sexual battery, rape, and incest; (2) the statute of limitation had run on the aggravated sexual battery and incest counts; (3) a fatal variance existed between the dates charged in the indictment and the evidence

adduced at trial; (4) the trial court erred in instructing the jury on the elements of rape; (5) and that he received ineffective assistance of counsel. Because Gordon's relationship to the victim did not fall within the ambit of the incest statute, we reverse his conviction for incest and remand the case for resentencing. Gordon's other claims, however, are without merit, and we affirm his remaining convictions.

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that when T. S. was 13 years old, Andre Gordon came to live with her family. Gordon began touching and interacting inappropriately with T. S., as will be detailed below. T. S. made outcry to her aunt and later to her mother, who called the police. The same day that the police were called, Gordon told T. S.'s stepfather that he had "messed with" his family. T. S. was examined by a nurse at a clinic for sexually transmitted diseases and at a hospital. The examinations showed that her hymen was not intact, but also showed no signs of bruising, tearing, or trauma consistent with sexual assault. T. S. indicated she had no sexual history prior to the incident with Gordon.

1. Gordon contends that the evidence was insufficient to sustain the verdict as to the aggravated sexual battery, rape, and incest counts.[1]

> When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts.

(Footnote omitted.) *Colton v. State*, 297 Ga. App. 795, 796 (1) (678 SE2d 521) (2009).

(a) *Aggravated sexual battery*. Gordon argues that the victim's trial testimony that he "would finger her" was too vague to establish that penetration, an essential element of aggravated sexual battery, occurred.

A person commits aggravated sexual battery when he "intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). A "foreign object" is anything other than a

---

[1] Gordon does not challenge the sufficiency of the evidence as to his conviction for child molestation.

person's sexual organ and may include body parts such as fingers, and even slight penetration satisfies the statute's requirements. *Colton*, supra.

The indictment charged that Gordon "did intentionally penetrate the vagina of [T. S.] with a finger of the accused" without T. S.'s consent. At trial, T. S. testified that Gordon "would finger me *in my vagina*." (Emphasis supplied.) A police investigator who interviewed T. S. testified that she told him Gordon "penetrated her vaginal area with his fingers" and "took his right hand and placed his index and middle finger into her vaginal area and started to rub inside her vagina." The evidence was sufficient.

(b) *Rape*. To prove that Gordon raped T. S., the State was required to show that he had carnal knowledge of her forcibly and against her will. OCGA § 16-6-1 (a) (1). Gordon does not dispute that the State proved force and lack of consent. He argues only that the victim's description of the "carnal knowledge" element of rape was ambiguous because it could have established penetration required for the crime of sodomy, rather than vaginal penetration as required for the carnal knowledge element of rape. We disagree.

"Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a) (1). At trial, T. S. testified that

4

Gordon "tried to penetrate" her while "I was . . . laying [sic] on my side, and from behind he tried to put his penis in me. But, that's when he pushed in, and I kind of 'crinched' (phonetic) and it hurt and that's why I looked at him, and that's when he pulled out[.]" T. S. testified that when Gordon tried to penetrate her, she "got real scared[.]" When he told her not to tell her grandmother, she curled up in a ball. She finally decided to tell someone, fearing that if she did not act soon, "it could get worse." The investigator who interviewed T. S. testified that she told him, as to the same incident, that Gordon "pulled her shorts and panties aside and *inserted his penis into her vagina*." (Emphasis supplied.)

It is well settled that "it is the function of the jury, not appellate judges, to assess the credibility of witnesses, weigh and draw reasonable inferences from the evidence, and resolve conflicts in the evidence." (Citation omitted.) *Roberts v. State*, 313 Ga. App. 849, 850 (1) (723 SE2d 73) (2012). In light of the testimony outlined above, a rational jury could find that the evidence was sufficient to show that Gordon penetrated T. S.'s vagina with his penis.

(c) *Incest*. Gordon argues that the evidence is insufficient because Georgia's incest statute does not prohibit sexual intercourse between a "step-uncle" and niece, and thus, that the State failed to prove the existence of a relationship proscribed by

OCGA § 16-6-22. As an initial matter, counsel's use of the term "step-uncle" is inapt and confusing, as T. S.'s mother and Gordon are half-siblings who have the same father. Thus, Gordon is T. S.'s uncle, related by half-blood. He is not her "step-uncle."

In pertinent part, OCGA § 16-6-22 (a) (6) provides that "[a] person commits the offense of incest when such person engages in sexual intercourse . . . with a person whom he or she knows he or she is related to either by blood or by marriage as follows: . . . [u]ncle and niece[.]" The statute does not refer to half-blood uncles. However, it does specifically refer to other half-blood relationships in prohibiting incest between a brother and sister "of the half blood[.]" OCGA § 16-6-22 (a) (3).

Well-settled principles of statutory construction provide that "expressio unius est exclusio alterius (the expression of one thing implies the exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)." (Citations omitted.) *Jackson v. State*, 299 Ga. App. 356, 358 (2), n. 4 (683 SE2d 60) (2009). Because Georgia's incest statute specifically refers to a brother and sister of the half blood, it necessarily excludes other, unmentioned half-blood relationships. See *Smith v. State*, 311 Ga. App. 757, 758-759 (1) (717 SE2d 280) (2011) (count of

6

indictment charging defendant with incest for having sexual relations with adoptive sister, with whom he had no blood relationship, was insufficient as a matter of law because incest statute expressly applies only to siblings of the whole blood or the half blood); *Glisson v. State*, 188 Ga. App. 152, 152-153 (372 SE2d 462) (1988) (evidence insufficient to prove incest where allegation involved a step relationship not specifically mentioned in OCGA § 16-6-22).

"The fact that the sexual acts here involved are fully as loathsome and disgusting as the acts proscribed by the Code does not justify us in reading into the statutory prohibition something which the General Assembly either intentionally or inadvertently omitted." (Citation and punctuation omitted.) *Glisson*, supra at 153 (1). Because the relationship at issue here is not one expressly enumerated by the statute, we cannot find that the sexual relationship between Gordon and T. S. is incestuous. Id. Accordingly, Gordon's incest conviction must be reversed.

2. Gordon argues that he was tried and convicted under an indictment in which the statute of limitation had run on the aggravated sexual battery and incest counts. Given our reversal of Gordon's conviction for incest in Division (1) (c), we need not reach his contention related to incest in this enumeration. As to the aggravated battery count, however, Gordon neither demurred nor moved to quash or dismiss. He "did not

7

object to the [allegedly] time-barred count[] at trial, and is therefore procedurally barred from raising the issue on appeal." (Footnote omitted.) *Zellars v. State*, 278 Ga. 481, 483 (3) (604 SE2d 147) (2004).

3. Gordon next argues that there is a fatal variance between the dates alleged in the indictment and the evidence adduced at trial as to the offenses of rape and incest. Again, we need not reach this contention as to the incest count because of our determination in Division (1) (c). As to the rape count, Gordon argues that because the dates in the indictment were not prefaced by the words "on or about" they were material averments and the State failed to prove that the crime occurred on those precise dates. The indictment, however, does not allege that the dates were material averments.[2]

> Where, as here, the State alleges a certain range of dates in an
> indictment and does not specifically allege that those dates are material,
> the State is not restricted at trial to proving that the crimes occurred

---

[2] Gordon argues that the trial court stated that "I deliberately went through each of the four offenses on the form with the verdict, in order to make it absolutely clear to the jury that the dates are essential averments in the indictment." However, the court made this statement outside the presence of the jury. In its charge to the jury, the court noted the dates but made no mention of them as essential averments. Gordon points us to no authority, nor do we find any, standing for the proposition that a trial court's sua sponte identification of dates as material averments in fact and law makes them so.

8

within that range of dates. And, if there is a variation between the date alleged and the date proved at trial, the variance does not entitle a defendant to a new trial unless it prejudiced the defense.

(Citations omitted.) *Adams v. State*, 288 Ga. 695, 698-699 (2) (707 SE2d 359) (2011). Gordon offered no alibi evidence and did not request a continuance on grounds of surprise. Id. at 699 (2). When the exact date of a crime is not a material allegation in the indictment, the State may prove the crime took place on any date prior to the return of the indictment and within the statute of limitation. *McDaniel v. State*, 289 Ga. App. 722, 725-726 (4) (658 SE2d 248) (2008).

The indictment alleges that the crime occurred "between the 28th day of July, 2000 and the 29th day of July 2000[.]" At trial, although there was some conflicting testimony as to when the crime occurred, the conflicting dates were within the statute of limitation. See generally *Dorsey v. State*, 265 Ga. App. 404, 405 (1) (593 SE2d 945) (2004). Further, T. S. testified about the incident, stating that she spoke to police "the day after" the rape occurred. A police investigator interviewed T. S. on July 29, 2000, showing that her testimony meant that the incident occurred on July 28, 2000, one of the dates listed in the indictment. This enumeration cannot succeed.

9

4. Gordon contends that the trial court erred in instructing the jury on the material elements of the offense of rape because the charge did not "sufficiently differentiate" the elements of rape as being both forcible and against the will of the victim. Gordon did not object to this instruction, so we review it only for plain error affecting the substantial rights of the parties. See OCGA § 17-8-58 (b).

> The hurdle to establishing plain error is high, and the party asserting it must demonstrate the following: First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Punctuation and footnotes omitted.) *Harris v. State*, 324 Ga. App. 411, 416 (5) (750 SE2d 721) (2013).

OCGA § 16-6-1 (a) (1) provides that "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will."

10

[T]he terms "forcibly" and "against her will" are two separate elements of proving rape. The term "against her will" means without consent; the term "forcibly" means acts of physical force, threats of death or physical bodily harm, or *mental coercion, such as intimidation.* The [S]tate must prove the element of force as a factual matter in forcible rape cases rather than presuming force as a matter of law based on the victim's age. However, the quantum of evidence to prove force against a child is minimal, since physical force is not required. *Intimidation may substitute for force. . . . Lack of resistance, induced by fear, is force*[.]

(Citations and punctuation omitted; emphasis in original.) *House v. State*, 236 Ga. App. 405, 408 (1) (512 SE2d 287) (1999). Here, the trial court charged the jury in pertinent part that

[a] person commits rape when he has carnal knowledge of a female, *forcibly and against her will. . . .* A child under the age of sixteen years legally cannot consent to sexual intercourse with any person other than his or her spouse. In the case of a rape where the victim is under the age of consent, this satisfies the element of "against her will," with regards to the charge of rape. *The State, however, must prove the element of force.* Now, I charge you that when contemplating the element of force as to the charge of rape, you may conclude that the element of force is satisfied where there is *a lack of resistance induced by fear*.

(Emphasis supplied.) Contrary to Gordon's contention, the trial court's charge adequately differentiated between the elements of rape, and the portion of its charge

11

dealing with force precisely tracked the language in *House*, supra. Although the trial court did not define force to include physical force, death threats, or bodily harm, jury charges are to be tailored to the evidence, and no evidence was presented on the aforementioned issues, nor did the indictment allege them. See *Harris*, supra. Gordon has not shown how the charge as given either conflated the elements of rape, was an incorrect statement of the law, or affected his substantial rights.[3]

5. Finally, Gordon argues that he received ineffective assistance of counsel.

To prevail on an ineffective assistance claim, Gordon

was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial courts factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4), (728 SE2d 225) (2012).

---

[3] Because of our finding that Gordon has not met the *Harris* plain error criteria, we need not reach the issue of whether trial counsel's statement that the defense had no objections to the charge as given amounts to an affirmative waiver. See *State v. Kelly*, 290 Ga. 29, 34 (2) (b), n. 5 (718 SE2d 232) (2011).

(a) Gordon also argues that trial counsel was ineffective in failing to file a plea in bar to the statute of limitation on the incest and aggravated sexual battery counts. However, Gordon provides no citations to the record in violation of Court of Appeals Rule 25 (c) (2) (i), which provides that "[e]ach enumerated error *shall* be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court will not search for or consider such enumeration." (Emphasis supplied.) See *Collins v. State*, __ Ga. App. __ (6) (756 SE2d 269) (2014) (claim of error abandoned where appellant failed to cite to record or transcript). "It is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record. [Gordon] has not met his burden and it is not the function of this Court to cull the record on behalf of a party in search of instances of error." (Citation and punctuation omitted.) *Jones v. State*, 318 Ga. App. 342, 348 (3) (a) (iii), n. 4 (733 SE2d 400) (2012).

(b) Gordon contends that his trial lawyer was ineffective in failing to request a jury charge on sexual battery as a lesser-included offense of aggravated sexual battery and child molestation. Gordon presents no argument as to why such a charge would have been appropriate given the facts of his particular case. See *Smith v. State*, 310 Ga. App. 392, 394-395 (2) (713 SE2d 452) (2011). Further, at the motion for new

13

trial hearing, Gordon's trial attorney explained that her decision not to pursue lesser included offenses was

> pure trial strategy. Our whole point of view of the case is [that] it did not happen[.] . . . If the allegations were of touching, *the doctor said there is no signs of touching or no signs of penetration* . . . there was no reason to include a lesser included offense, especially when a very reasonable plea offer had been made earlier and rejected. . . . [M]y strategy was since it was all based on who believed who, we were going forward with an all or none.

Given that Gordon's trial strategy was a categorical denial that anything inappropriate happened, seeking a lesser included offense of sexual battery would have been inconsistent with that strategy. "[A] charge request must be apt, a correct statement of the law, and *precisely adjusted to some theory in the case*." (Citation and punctuation omitted; emphasis supplied.) Id. at 395 (2). Gordon has shown neither deficiency nor prejudice. *Stansell v. State*, 270 Ga. 147, 149-150 (2) (510 SE2d 292) (1998).

(c) Gordon asserts that counsel was ineffective in failing to object to the trial court's jury charge on rape. Given our determination in Division 4, such an objection would have been futile, and counsel is not rendered ineffective for failing to raise a

14

meritless objection. *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012).

(d) Gordon's remaining assertion of ineffective assistance of counsel, which is related to the incest conviction we reversed in Division (1) (c), is moot. See *Martinez v. State*, 325 Ga. App. 267, 274-275 (2) (750 SE2d 504) (2013).

*Judgment affirmed in part and reversed in part, and case remanded for resentencing. Andrews, P. J., and McFadden, J., concur.*

15